RECEIPT #_____
AMOUNT $ _120.00_
SUMMONS ISSUED___✓___
LOCAL RULE 4.1___✓___
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK.___KH___
DATE___11-19-04___

UNITED STATES
DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 NOV 19 A 11: 16

MARGARET COAKLEY HAMELIN          )     Civil Action
        Plaintiff                 )     No_____
vs                                )
                                  )
THE HARTFORD LIFE AND             )     PLAINTIFF'S COMPLAINT
ACCIDENT INSURANCE COMPANY        )
        Defendant                 )     **04-40241 FDS**

## NATURE OF ACTION

The plaintiff, Margaret Coakley Hamelin, files this
Complaint against the defendant The Hartford Life and Accident
Insurance Company, (hereinafter "Hartford") seeking judicial
review of the Hartford's denial of the plaintiff's Complaint for
Long Term Disability benefits.

## JURISDICTION AND VENUE

1.  Jurisdiction of the Court is based upon 29 USC §§1132(e)(1)
    and 1132(f) which give the district courts jurisdiction to
    hear civil actions brought to recover benefits due under the
    terms of an employee benefit plan which for purposes of the
    instant case, grants to participants Long Term Disability
    Benefits.  The defendant, Hartford provides participants in
    the Commonwealth of Massachusetts Group Insurance Plan with
    Long Term disability insurance subject to the terms and
    conditions of the Plan.  (A copy of the Plan is attached
    hereto as Exhibit "1")

2.  Under the Employee Retirement Income Security Act of 1974,
    as amended (hereinafter, "ERISA") (29 U.S.C. Section 1001 et
    seq) the Plan at issue in this litigation must contain
    provisions for an administrative or internal appeal of a
    denial of benefits.  The plaintiff has exhausted all of her
    remedies in this claim and therefore this matter is properly
    before this Court for judicial review of the denial of her
    benefits.

3.  The plaintiff, Margaret Coakley Hamelin, is a resident of
    Sterling, Worcester County, Massachusetts.

4.  Venue is proper in this district pursuant to 29 USC §1132
    (2) which allows an action under Title I of the Employee
    Retirement Income Security Act of 1974 as amended ("ERISA")
    to be brought in the district where the plan is

administered, where the breach took place or where a defendant resides or may be found and process may be served in any other district where a defendant resides or may be found.

## PARTIES

5.  The plaintiff, Margaret Coakley Hamelin, was born on October 14, 1954.

6.  The defendant, Hartford Life and Accident Insurance Company, issued Group Policy No: GLT-205230 that provides disability benefits for employees of the Commonwealth of Massachusetts who enroll in the Plan.  The defendant, Hartford has a place of business at 200 Hopmeadow Street, Simsbury, CT.

7.  At all times relevant, the plaintiff Margaret Coakley Hamelin, was an employee of the Commonwealth of Massachusetts.  She was employed as an Associate Professor of Respiratory Therapy at Quinsigamond Community College in Worcester, Massachusetts and was a member of the Plan.

8.  Ms. Coakley Hamelin suffered for a number of years from rheumatoid arthritis and systemic lupus. She became disabled from work on 1999 and she received disability benefits under the Hartford policy from March 1, 1999 to December 1, 2001.

9.  The definition of disability contained in the policy provides in essence that an employee is considered disabled during the first 24 months of disability if the employee is prevented from performing Essential Duties of Her Own Occupation.  Hartford accepted Ms. Coakley-Hamelin's claim that she was prevented from performing Essential Duties of Her Own Occupation from March 1, 1999 until December 1, 2001 and paid disability benefits to her during that period.

10. The definition for disability under the Plan provides in essence that after 24 months, an employee is disabled and entitled to benefits under the Plan if the employee is prevented from performing the Essential Duties of Any Occupation.  See Plan, Pg. 9.

11. On December 3, 2001, the Hartford notified the plaintiff that the Hartford considered that Ms. Coakley-Hamelin was no longer disabled as defined by the Plan and that her long term disability benefits were terminated.  (A copy of the letter is attached as Exhibit "2").

12. By letter dated January 28, 2002, Ms. Coakley-Hamelin, through her attorney, appealed the termination or denial of her benefits. (A copy of the letter is attached as Exhibit "3").

13. By letter dated April 25, 2002, the Hartford denied Ms. Coakley-Hamelin's appeal. (A copy of the letter is attached as Exhibit "4").

14. Hartford based its denial on the report of a physician selected by the University Disability Consortium. The physician, Dr. Harvey Schwartz, never examined Ms. Coakley Hamelin but only reviewed the medical records in Hartford's possession. (A copy of Dr. Schwartz's report is attached as Exhibit "5").

15. Dr. Schwartz does not state in any portion of his report that Ms. Coakley-Hamelin is capable of performing the Essential Duties of Any Occupation. Dr. Schwartz's report acknowledges that Ms. Coakley-Hamelin suffers from systemic lupus erythematosis, myofascial pain syndrome and a right shoulder rotor cuff tear. He concludes that she could sit for four hours per day, walk for one hour and drive for two hours. He further concludes that "the major reason why she could not engage in more consistent and regular work is because of the fatigue and frequent exacerbation's of her illness requiring doctor visits, hospital stays, emergency visits and increased medications."

16. Dr. Schwartz also noted that the medications that Ms. Coakley-Hamelin is required to take can contribute to fatigue, decreased ability to concentrate, mood swings and visual problems.

17. Dr. Schwartz also confirmed that as of the date of his report, Ms. Coakley-Hamelin was taking 7.5 mg of Prednisone daily. Dr. Schwartz was advised by Ms. Coakley-Hamelin's treating physician, Dr. Lui, that controlling Ms. Coakley Hamelin's joint disease was a major problem and that Ms. Coakley-Hamelin had major fatigue symptoms.

18. Subsequent to the denial of Ms. Coakley-Hamelin's appeal, the plaintiff through counsel, submitted a report of Dr. Abigail Adams dated March 9, 2004. Dr. Adams is a treating physician of Ms. Coakley-Hamelin. In her report, Dr. Adams noted that Ms. Coakley-Hamelin's daily Prednisone dosage was up to 30 mg and that she is 100% disabled by rheumatoid arthritis and systemic lupus. Dr. Adams recommended against any increased activity level as such activity produces

recurrent flare-ups of Ms. Coakley-Hamelin's symptoms.  (A copy of the report is attached as Exhibit "6").

19.  The plaintiff, on June 7, 2004, in reliance of the report of Dr. Adams, requested that Ms. Coakley Hamelin's long term disability benefits be reinstated.

20.  Hartford, by letter dated June 11, 2004, denied Ms. Coakley-Hamelin's request and closed her file.  Hartford refused to consider Dr. Adams report and again denied benefits to Ms. Coakley-Hamelin.  (A copy of the denial letter is attached as Exhibit "7").

## COUNT I

21.  The plaintiff restates the allegations set forth in paragraphs 1 - 20 of this complaint and incorporates them herein by reference.

22.  The plaintiff, Margaret Coakley-Hamelin is entitled to payment of Long Term Disability benefits from December 2, 2001 to the present and continuing pursuant to the Commonwealth of Massachusetts Long Term Disability Plan.

23.  The decision of the Hartford to deny Long Term Disability benefits is arbitrary and capricious, wholly unreasonable and against the weight of the medical evidence.

24.  The defendant Hartford has breached its duty to the plaintiff under the Plan to fairly administer claims for benefits and to provide a full and fair review of denial of claims.

25.  The defendant Hartford has misapplied the definition of "Disability" as set forth in the Plan and deprived the plaintiff of benefits to which she is entitled under the terms of the Plan.

WHEREFORE, the plaintiff Margaret Coakley-Hamelin requests that this Court grant for following relief.

A.  That this Court order, declare and adjudge that under the terms of Long Term Disability Plan, that the total disability continued from December 2, 2002 and that she continues to be disabled within the Plan's provisions.

4

B.   That after making such determination, the Court order the
     defendant Hartford, to provide all disability benefits to
     which the plaintiff is entitled under the terms and
     conditions of the Plan.

C.   That the Court award plaintiff her attorneys fees pursuant
     29 USC §1132 (q) as well as interest and costs.

D.   That the Court award the plaintiff such further necessary or
     proper relief as it seems just and equitable.

                    John F. Hurley, Jr., Esquire
                    Attorney for the Plaintiff
                    MacCarthy,Pojani&Hurley, LLP
                    446 Main Street
                    Worcester, MA 01608
                    508-798-2480
                    BBO #245200

Dated: November 11,2004

F:\data2\mch.cmp.doc

5

**04-40241 FDS**

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

1.  **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)**_____

    Margaret Coakley-Hamelin vs The Hartford Life and Accident Insurance Company

2.  **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LIST ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1))**

    ___   I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT

    _X_   II.   195, 368, 400, 440, 441-444, 540, 550, 625, 710, 720,730,
                740, 790, (791) 820, 830, 840, 850, 890, 892-894, 895, 950.

    ___   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

    ___   IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

    ___   V.    150, 152, 153.

3.  **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E))**

    _____

4.  **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?** _____ NO

5.  **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?** _____ NO

    **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY? (SEE 28 USC 2403)**
    _____ NO

6.  **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?** _____ NO

7.  **DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY)? (SEE LOCAL RULE 40.1(C)) YES _____ OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? (SEE LOCAL RULE 40.1(D)) YES _____**

8.  **DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT? YES _X_**

    (a)   **IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE?** _Central_

9.  **IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?** _Central_

10. **IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE CENTRAL SECTION_____OR WESTERN SECTION_____**

**(PLEASE TYPE OR PRINT)**

**ATTORNEY'S NAME**_____ John F. Hurley, Jr.

**ADDRESS**_____ MacCarthy, Pojani & Hurley, LLP, 446 Main Street, Worcester, MA 01608

**TELEPHONE NO.**_____ 508-798-2480

(COVER.SHT-08/98)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Margaret Coakley Hamelin

**DEFENDANTS**

The Hartford Life and Accident
Insurance Company

04-40241 FDS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John F. Hurley, Jr., Esquire
MacCarthy, Pojani & Hurley, LLP
446 Main Street
Worcester, MA 01608    508-798-2480

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS – Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This is an action to review the denial of benefits under a disability insurance policy issued through plaintiff's employer.  Jurisdiction is based on 29USC§1132 (e) (1)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**    ☐ YES    ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE  11/19/04

SIGNATURE OF ATTORNEY OF RECORD  _John F. Hurley Jr._

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____



# Long Term Disability
# Insurance Plan



**Group Insurance Commission**
**Commonwealth of Massachusetts**



**THE HARTFORD**
**LONG TERM DISABILITY PLAN**
**GROUP INSURANCE POLICY GLT-205230**

TABLE OF CONTENTS

Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page  2
Schedule of Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page  3
Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page  4
Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page  5
Your Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10
Disability Benefits Conditions, Limitations and
   Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 15
Claims Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 18

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
**Hartford, Connecticut**
(Herein called The Hartford)

**CERTIFICATE OF INSURANCE**
Under
**The Group Insurance Policy**
**as of July 1, 1993**
**Revised Effective July 1, 1998**
**Issued by The Hartford**
to
**THE COMMONWEALTH OF MASSACHUSETTS**
**GROUP INSURANCE COMMISSION**

This is to certify that, subject to the terms of Group Policy No. GLT-205230, the employees of the Commonwealth of Massachusetts are insured for the benefits described in Benefits, below.

The Policy insures the Commonwealth of Massachusetts employees who:

- are eligible for the insurance; and
- become insured; and
- continue to be insured;

according to the terms of the Policy.

The terms of the Policy that affect your insurance are contained in the following pages. This Certificate of Insurance and the following pages are your Booklet-certificate and are a part of the Policy.

No assignment by you of any of your group insurance will be valid.

This Booklet-certificate takes the place of any prior one issued to you covering this insurance. This certificate is evidence of insurance under the policy.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

*Lynda Godkin*

Lynda Godkin, *Secretary*

Lowndes A. Smith, *President*

2

**THE HARTFORD**
**LONG TERM DISABILITY PLAN**
**SCHEDULE OF BENEFITS**

Some of the terms used within this Booklet-certificate are capitalized and have special meanings. Please refer to the **definitions** when reading about your benefits.

PLAN EFFECTIVE DATE: July 1, 1993
Revised Effective July 1, 1998

EMPLOYEES ELIGIBLE: All active full-time employees and half-time employees who work at least 18 3/4 or 20 hours per week (depending on the agency's definition of "half time").

ELIGIBILITY WAITING PERIOD: You will have completed the Eligibility Waiting Period on the first day of the month following the lesser of two full calendar months or 60 continuous days of active full-time employment.

INDIVIDUAL EFFECTIVE DATE: The first day of the month immediately following your Eligibility Waiting Period.

PLAN CONTRIBUTIONS: You pay the cost of the insurance plan.

**CONTRIBUTORY LONG TERM DISABILITY BENEFITS**
**FOR YOU**

Benefit Percentage: 50% of your Pre-disability Earnings.

Maximum Benefit: The maximum benefit is $10,000 per month.

Minimum Benefit: The minimum monthly benefit is $100.

Waiting Period: The Waiting Period is the period of time you must be disabled before benefits become payable. It is the first 90 days of any one period of Disability.

If you return to work for a total of 14 days or fewer during a Waiting Period, the Waiting Period will not be interrupted or extended. You must be Disabled by the same condition for the total Waiting Period, except for the 14 days or fewer you work.

3                    BC-205230 3rd (Rev.)

## ABOUT THIS PLAN

The Long Term Disability Plan of benefits is an employee-pay-all plan. It provides you with income protection if you become disabled from a covered accidental bodily injury, sickness or pregnancy. This booklet explains the terms of coverage. Final interpretation of all provisions and coverages will be governed by the Group Insurance Policy on file with The Hartford at its home office.

## ELIGIBILITY

Active full-time employees and half-time employees who work at least 18 3/4 hours or 20 hours per week (depending upon an agency's definition of "half-time") may join the Long Term Disability Plan. You become eligible for coverage the first day after you complete an *Eligibility Waiting Period* of the lesser of two full calendar months or 60 days of active full-time employment.

## ENROLLING FOR COVERAGE

To enroll for coverage, you must complete and sign The Hartford's enrollment form and deliver it to the employer.

If you enroll for coverage before you become eligible, your coverage will become effective the first day of the calendar month following the day you become eligible.

If you enroll for coverage within thirty-one days after the day you become eligible, your coverage will become effective the first day of the calendar month following the day you enroll.

If you enroll more than thirty-one days after the day you become eligible for coverage, you will not be insured until you satisfy The Hartford that you are insurable by submitting a signed medical health and history form. This form is provided by The Hartford. You may also be asked to submit to a medical exam and/or provide additional information and attending physicians' statements at your expense.

If you are absent from work due to accidental bodily injury, sickness, pregnancy, Mental Illness, or Substance Abuse, on the date your insurance would otherwise have become effective, your effective date will be deferred. Your coverage will become effective when you return to Active Work for one full day.

## YOUR LONG TERM DISABILITY BENEFITS

Disability benefits are issued monthly, and start on the day after you have been Disabled for 90 days. Disability must occur while you are insured under The Group Insurance Commission's Long Term Disability Plan. Benefits will continue as long as you remain Disabled up to the Maximum period of payment (see page 10). You must provide satisfactory proof to The Hartford that you continue to be Disabled in order to continue receiving benefits.

4

## DEFINITIONS

**Active Work/Actively at Work** means that you are performing, in the usual way, all of the regular duties of your job on a full time basis on a day which is one of your Employer's scheduled work days. You will be deemed actively at work on a day which is not one of your Employer's scheduled work days only if you were actively at work on the preceding scheduled work day.

**Any Occupation,** as used in this Booklet-certificate, means an occupation for which you are qualified by education, training or experience and that has an earnings potential greater than 50% of your Indexed Pre-disability Earnings.

**Changes in Coverage** means your coverage may increase or decrease on the date there is a change in your Monthly Compensation. Any changes to the provisions of this plan will not become effective for you unless you are Actively at Work on the date of the change, or for one full day following an absence from work.

Any changes in your Monthly Compensation which affect the benefits of this plan will not become effective unless the correct premium payments have been received by The Hartford.

**Current Monthly Earnings** means the monthly earnings you receive from any employer or for any work, while Disabled and eligible for Residual Disability benefits under this plan.

**Disabled** or **Disability** means either Totally or Residually Disabled or Total or Residual Disability.

**Essential Duty** means a duty that is substantial, fundamental or material to the occupation and is not incidental and cannot be reasonably omitted or changed. To be at work for the number of hours in your regularly scheduled work week is also an Essential Duty.

**Indexed Pre-disability Earnings**, as used in this policy, means your Pre-disability Earnings adjusted annually by adding the lesser of 10% or the percentage change in the Consumer Price Index (CPI-W).

The adjustment is made January 1st each year after you have been Disabled for 12 consecutive months, and if you are receiving benefits at the time the adjustment is made.

5

The term Consumer Price Index (CPI-W) means the index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. It measures on a periodic (usually monthly) basis the change in the cost of typical urban wage earners' and clerical workers' purchase of certain goods and services. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W may be used.

For the purpose of this benefit, the percentage change in the CPI-W means the difference been the current year's CPI-W as of July 31, and the prior year's CPI-W as of July 31, divided by the prior year's CPI-W.

**Medical Care** means consultation or medical advice is given or treatment is recommended, prescribed by, or received from a Physician. Treatment includes but is not limited to medical examinations, tests or attendance, use of drugs, medicines, medical services, supplies or equipment.

**Mental Illness** means any psychological, behavioral, or emotional disorder or ailment of the mind, including physical manifestations of such disorders, but excluding demonstrable, structural brain damage.

**Monthly Compensation** means your regular basic earnings. It does not include overtime pay, bonuses, fringe benefits, or any extra compensation.

**Other Income Benefits** mean the amount of any benefit for loss of income, provided to you or to your family, as a result of the period of Disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are eligible or that are paid to you, to your family, or to a third party on your behalf, pursuant to any of the following:

    (1) temporary or permanent disability benefits under a Workers' Compensation Law, occupational disease law, or similar law;

    (2) Disability, or sick-time pay you receive while eligible for benefits under this plan, or unemployment benefits provided by a governmental law or program as a result of your job with your Employer;

    (3) plan or arrangement of coverage, whether insured or not, as a result of employment by or association with your Employer or as a result of membership in or association with any group, association, union or other organization;

6

(4) individual insurance policy where the premium is wholly or partially paid by your Employer;

(5) "no-fault" automobile insurance plan;

(6) disability benefits from the United States Social Security Administration, the Canada Pension Plan, the Quebec Pension Plan, or similar plan that you, your spouse and children, are eligible to receive because of your Disability.

**Other Income Benefits** also mean any payments that are made to you, your family, or to a third party on your behalf, pursuant to any:

(1) Disability benefit under the Employer's retirement plan.

(2) portion of a settlement or judgment, minus associated costs, of a lawsuit that represents or compensates for your loss of earnings;

(3) retirement benefit from a retirement plan that is wholly or partially funded by employer contributions, unless:

    (a) you were receiving it prior to becoming Disabled; or

    (b) you immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement.

    Other Income Benefits do not include the portion, if any, of such retirement benefit that was funded by your after-tax contributions;

(4) retirement benefits from the United States Social Security Administration, the Canada Pension Plan, the Quebec Pension Plan, or similar plan that you, your spouse and children, receive because of your retirement, unless you were receiving them prior to becoming Disabled.

The amount of any increase in benefits paid under any federal or state law will not be considered as Other Income Benefits if such increase takes effect after the date benefits become payable under this plan, and is a general increase that is required by law that applies to all persons who are entitled to such benefits.

**Period of Disability** means a continuous length of time during which you are Disabled under this plan.

**Physician** means a legally qualified person whom we are required by law to recognize, is properly licensed to practice medicine, and is practicing within the scope of that license.

7

**Pre-disability Earnings** means your Monthly Compensation in effect on the day before you became Disabled.

**Pre-existing Condition** means any accidental bodily injury, sickness, mental illness, pregnancy, or episode of substance abuse, or any manifestations, symptoms, findings, or aggravations related to or resulting from the same or related accidental bodily injury, sickness, mental illness, pregnancy, or substance abuse for which you received Medical Care during the 365-day period that ends the day before (1) your effective date of coverage, or (2) the effective date of a Change in Coverage.

**Regular Care of a Physician** means appropriate care and attendance by a Physician other than yourself, your spouse, father, mother, brother, sister, son or daughter.

**Rehabilitative Employment** means any employment or services that prepares a Disabled person to resume gainful work and is approved in writing by The Hartford. This may include any necessary and feasible vocational testing, vocational training, work place modification, prosthesis, or job placement.

**Residual Disability** or **Residually Disabled** means you are prevented by accidental bodily injury, sickness, Mental Illness, Substance Abuse, or pregnancy, from performing some, but not all, the Essential Duties of your or Any Occupation, and as a result your Current Monthly Earnings are at least 20%, but no more than 80% of your Indexed Pre-disability Earnings.

**Substance Abuse** means the non-medical use of any of the following substances: alcohol, narcotics, sedatives, stimulants, hallucinogens, or any other such substance.

**Survivor** means (1) your spouse (wife or husband) who is mentally competent and was not legally separated from you at the time of your death; (2) your child (son or daughter) under age 19 who is dependent on you for financial support.

**The Hartford** means the Hartford Life and Accident Insurance Company.

8

**Totally Disabled/Total Disability** means that during the Waiting Period and for the next 24 months, you are prevented by accidental bodily injury, sickness, Mental Illness, Substance Abuse, or pregnancy from performing Essential Duties of your Own Occupation, and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us. After that, you must be prevented from performing the Essential Duties of Any Occupation. Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean that you are Totally Disabled.

**Vocational Rehabilitation/Rehabilitative Services** means employment or services that prepare you, if Disabled, to resume gainful work. If you are Disabled, our Vocational Rehabilitative Services may help prepare you to resume gainful work.

Our Vocational Rehabilitative Services include, when appropriate, any necessary and feasible vocational testing or training, workplace modification, to the extent not otherwise provided, prosthesis, or job placement.

**We/Us/Our** means the Hartford Life and Accident Insurance Company.

**Your (Own) Occupation**, as used in this Booklet-certificate, means your occupation as it is recognized in the general workplace. Your (own) occupation does not mean the specific job you are performing for a specific employer or at a specific location.

**You/Your/Insured Person** means the Insured Person to whom this Booklet-certificate is issued.

9

## YOUR COVERAGE

If, while insured for these benefits you become Disabled, you are eligible for a monthly benefit for your Disability and your premiums will be waived while you receive benefits under this coverage. To qualify, you must be Disabled for 90 days after the day you become Disabled. You must submit proof of Disability satisfactory to The Hartford. Your monthly benefits will begin as of the first day after the Waiting Period ends; no benefit will be paid for any day that you are not under the Regular Care of a Physician.

The Benefit Percentage is 50% of your average Monthly Compensation in effect as of the last day worked prior to your Disability, with the minimum monthly payment of at least $100 per month, to a maximum of $10,000 per month. Your monthly benefit will be the Benefit Percentage less any Other Income Benefits payable for that month.

Benefit payments will cease on the earliest of the following dates:

    (1) the date you are no longer Disabled;

    (2) the date you fail to furnish proof, when requested by The Hartford, that you continue to be Disabled;

    (3) the date you are no longer under the Regular Care of a Physician, or refuse to be examined by a Physician, if we require such an examination;

    (4) the date you die;

    (5) the date you reach the maximum period of payment according to the table shown below, subject to other plan limitations; or

    (6) the date your Current Monthly Earnings exceed 80% of your Indexed Pre-disability Earnings.

### MAXIMUM DURATION OF BENEFITS

| Age at date Disability starts | Maximum period of payment |
|---|---|
| Under age 61 | To age 65 |
| 61 | 4 years |
| 62 | 3 1/2 years |
| 63 | 3 years |
| 64 | 2 1/2 years |
| 65 | 2 years |
| 66 | 1 3/4 years |
| 67 | 1 1/2 years |
| 68 | 1 1/4 years |
| 69 or later | 1 year |

10

## CALCULATION OF MONTHLY BENEFIT

**Total Disability:**

If you are Disabled after the Waiting Period, your monthly benefit will be calculated as follows:

    (1) Multiply your Monthly Compensation by the Benefit Percentage shown in the Schedule of Benefits; (see page 3)

    (2) Locate the Maximum Benefit shown in the Schedule of Benefits; (see page 3)

    (3) Compare the amounts determined in items (1) and (2) above and from the lesser amount subtract all Other Income Benefits.

The result is your monthly benefit. Your monthly benefit, however, will not be less than $100.00.

### Example of a calculation of monthly benefit for Total Disability:

Susan is 37 years old and earns $3,100 monthly. She receives other monthly income benefits of $300.00.

To calculate her monthly benefit, she must:

1) multiply $3,100 by .50 (her 50% Total Disability benefit) = $1,558.00

and

2) subtract $300 (her Other Income Benefits) from $1,558 = $1,258.00

Susan's monthly Total Disability benefit is $1,258.00.

### Remember:

If Susan's Other Income Benefits were to exceed her monthly salary, she would still receive $100 monthly (e.g., the Minimum Benefit).

11

**Residual Disability:**

If you are able to perform some but not all the Essential Duties of your or Any Occupation, and are Residually Disabled, the following calculation is used to determine your monthly benefit.

$$\text{Monthly benefit} = ((A - B) / A) \times C$$

Where

**A** = Your Indexed Pre-disability Earnings.
**B** = Your Current Monthly Earnings.
**C** = The monthly benefit payable if you were Totally Disabled.

Your monthly benefit, however, will not be less than $100. If a monthly benefit is payable for less than a month, The Hartford will pay 1/30 of the monthly benefit for each day you were Disabled.

If you are participating in a program of Rehabilitative Employment approved by us, your monthly benefit will be determined by the Rehabilitative Employment Benefit (see page 13).

## PROOF OF COMPENSATION

The Hartford has the right to require proof of your Monthly Compensation. All such proof must be satisfactory to The Hartford. The Hartford, or its representative, may examine your business and personal financial records, including income tax returns, to determine your monthly income. These records may be examined as often as The Hartford may reasonably require.

## EFFECT OF OTHER INCOME BENEFITS

If you are paid Other Income Benefits in a lump sum, The Hartford will pro-rate the lump sum over the period of time it would have been paid if not paid in a lump sum; or if the period of time cannot be determined, The Hartford will pro-rate the lump sum over a period of 60 months.

The Hartford may make a retroactive benefit adjustment for any retroactive Other Income Benefit payments.

**PERIODS OF DISABILITY**

Periods of Disability that are due to unrelated causes and are separated by your return to Active Work are deemed to be separate Periods of Disability.

Periods of Disability that are due to the same or related causes are treated as one period, unless they are separated by your return to Active Work for at least six months.

Only one Waiting Period will be required for all Periods of Disability that are treated as one Period of Disability. All Periods of Disability must begin while you are insured.

**BENEFITS DURING REHABILITATION**

You might be able to return to work while you are engaged in an approved program of Rehabilitative Employment after you have received Long Term Disability benefits for a period of time. If you qualify for the program, you will continue to be paid the monthly benefit while you are in the program that The Hartford would have paid had you not been able to work, *less* 50% of your Monthly Compensation from the Rehabilitative Employment. Your monthly income from these two sources may not exceed 100% of your pre-Disability income.

These benefits will be paid in accordance with all other provisions of the policy.

13

## SURVIVOR INCOME BENEFIT

The Hartford will pay a benefit to the surviving spouse or surviving dependent children of a covered employee who dies after satisfying the Waiting Period or who has received Long Term Disability payments under the policy.

The Survivor Income Benefit will be payable to your surviving spouse in a lump sum equal to three times the Maximum Monthly Benefit shown in the Schedule of Benefits or three times the amount of the last monthly Long Term Disability payment to you, whichever is less. Surviving dependent children will receive the benefit in equal shares if there is no surviving spouse. The Survivor benefit will be payable to your estate if no surviving spouse or children exist.

If a minor child is entitled to benefits, The Hartford will determine whether to make survivor income benefit payments to the person caring for and supporting the child until a legal guardian is appointed.

Your Survivor must submit a certified copy of your death certificate to The Hartford.

## EXTENDED BENEFITS

If your Long Term Disability coverage ends because you are no longer employed by the Commonwealth of Massachusetts or are no longer in a class eligible for insurance, benefits may be payable if you become Disabled. The Disability must occur:

(1) within 12 months after you cease active employment due to an employer-approved leave of absence;

(2) within 90 days after you cease active employment due to a plant closing or partial closing (as defined by Massachusetts law);

(3) within 31 days after you cease active employment due to a cause other than a plant closing partial closing, or employer approved leave of absence; or

(4) before the date you become eligible for any other similar group benefits plan.

Benefits will be based on the plan in force on the date your active employment ends.

14

If you are Disabled and you cease to be an active employee, your coverage will be continued during the Waiting Period for the same Disability and after the Waiting Period for as long as you are entitled to Plan benefits.

If the policy should terminate while you are Disabled, Long Term Disability benefits will continue to be available during the uninterrupted continuance of the same Disability. Benefits will not be provided beyond the date on which The Hartford would have ceased to make payments had the coverage remained in force.

## DISABILITY BENEFITS CONDITIONS, LIMITATIONS AND EXCLUSIONS

### Exclusions:

1. Long Term Disability benefits are not payable for Disabilities that result from commission of or an attempt to commit an assault, battery, intentionally self-inflicted injury, or felony; war or any act of war, insurrection, rebellion or participation in a riot or civil disorder; or a Pre-existing Condition except as described below.

2. Benefits are not payable during the Waiting Period.

### Conditions and Limitations:

1. If benefits are payable for a period that is less than one month, the amount payable for each day will be one-thirtieth of the monthly rate.

2. No benefits will ever be payable for any Disability that is due to, contributed to by, or results from a Pre-existing Condition, unless such Disability begins:

    (a) after 12 consecutive months while insured during which you received no Medical Care for the Pre-existing Condition; or

    (b) after 24 consecutive months during which you have been continuously insured under the Group Insurance Commission's Long Term Disability Plan.

3. If you are Disabled because of Mental Illness that results from any cause, or any condition that may result from Mental Illness or Substance Abuse then, subject to all other Policy provisions, benefits will be payable for a total of 12 months, thereafter, for so long as you are confined in a hospital or other place licensed to provide Medical Care.

15

**WHEN INSURANCE ENDS**

Your insurance ends when any one of the following events occurs:

(a) you leave employment with the Commonwealth of Massachusetts;

(b) you are no longer eligible;

(c) the Group Policy ceases; or

(d) your premium is not paid by the due date.

Please refer to the Extended Benefits provisions for conditions under which your insurance may continue when your employment terminates.

16

Your cost for coverage may change when your age or Monthly Compensation changes. Premium must be paid to The Hartford throughout the Waiting Period. After the Waiting Period, no premium will be due for you while you are receiving benefits.

**Monthly Premium Rates Guaranteed July 1, 1998 to June 30, 2002**

| Age | Rate per $100 of Monthly Compensation |
|---|---|
| Under 40 | .23 |
| 40-44 | .46 |
| 45-49 | .68 |
| 50-54 | 1.08 |
| 55-59 | 1.44 |
| 60-64 | 1.08 |
| 65-69 | .48 |
| 70+ | .27 |

17

## CLAIMS INFORMATION

On receipt of due proof of claim, Long Term Disability Benefits are payable to you. Accrued benefits are paid monthly during the period for which benefits are payable under the policy. If there is any balance still due you at the end of such period, it will be paid upon receipt of due proof.

**Notice of Claim.** Written notice of the event on which a claim is based must be given to The Hartford at its home office in Hartford, Connecticut no later than one month before the Waiting Period ends. On receipt of such notice you will be given forms for filing proof of claim. Later notice will be accepted only if it is furnished as soon as is reasonably possible.

**Proof of Claim.** Written proof of claim must be given to The Hartford at its home office in Hartford, Connecticut, on The Hartford's forms. If you have not been given such forms within fifteen days after receipt of notice, you may fulfill the terms of the policy as to proof of claim by giving written proof of: (i) the occurrence of the Disability; (ii) the nature of the Disability; and (iii) the extent of the Disability.

After the end of the 90-day Waiting Period, proof of your Disability must be given as above within 120 days after the start of the period for which The Hartford owes payment. Thereafter, written proof that you have remained so Disabled must be given to The Hartford at such times as it may reasonably require.

The Hartford will require as part of the proof of claim evidence of the following:

(1) the amount and source of all Other Income Benefits named and payable; and

(2) your application for, and your submission of all the required proof of all other such benefits.

Late proof will be accepted only if it is furnished as soon as is reasonably possible.

18

When you submit a claim, you will be required to apply for Social Security disability benefits. If the Social Security Administration denies your eligibility for any such benefits, you will be required to follow the process established by the Social Security Administration to reconsider the denial and, if denied again, to request a hearing before an Administrative Law Judge of the Office of Hearing and Appeals.

**Time Payment of Claims.** If written Proof of Claim is furnished, benefits will be paid at the end of each month that you are Disabled. If payment for a part of a month is due at the end of the claim, it will be paid as soon as written Proof of Claim is received.

**Examinations.** The Hartford, when it deems it reasonably necessary and at its own expense, has the right to have a doctor examine you while you have a claim pending under the policy.

**Appeals.** If a claim for benefits is denied, you will be notified in writing of the decision and the specific reasons for the denial. The letter will specifically refer to the policy provisions on which the denial was based, and will provide an explanation of the review procedure.

On any denied claim, you may appeal to The Hartford for a full and fair review. You may 1) submit issues and documents in writing; 2) request a review in writing within 60 days of the claim decision; and 3) ask to review pertinent documents.

The Hartford will make a decision no more than 60 days after receipt of your request for a review, except in special circumstances, but in no case more than 120 days after the review request is received. The written decision will include specific references to the policy provisions upon which the review decision is based.

**Legal Actions.** No one may sue for payment of claim less than sixty days after due proof of claim is furnished or more than 3 years after the date proof of claim is required by the policy.

19

**Subrogation**

If an insured person:

    (1) suffers a Disability because of the act or omission of a third party; and

    (2) becomes entitled to and is paid benefits under this Group Policy in compensation for lost wages; and

    (3) does not initiate legal action for the recovery of such benefits from the third party in a reasonable period of time;

then The Hartford will be subrogated to any rights the insured person may have against the third party and may, at its option, bring legal action to recover any payments made by it in connection with the Disability.

**Right to Recover Overpayment**

We have the right to recover from you any amount that is determined to be an overpayment of benefits under this plan. Repayment to us must be made within 60 days of your receipt of our notice of the amount of the overpayment. If you do not repay the overpayment within the 60 day period, we may, without forfeiting our right to collect an overpayment through any means legally available to us, recover all or any portion of the overpayment by reducing or withholding future benefit payments including, if applicable, the Minimum Monthly Benefit.

**Misstatement of Facts**

If material facts about you were not stated accurately, your premium may be adjusted, and the true facts used to determine if, and for what amount, coverage should have been in force. After the insurance has been in force for two years during your lifetime, no statement made by you relating to your insurability will be used to contest the insurance for which the statement was made. In order to be used, the statement must be in writing and signed by you.

20





**Hartford Life**

December 3, 2001

Margaret A. Coakley-Hamelin
12 Michael Lane
Sterling, MA 01564

Policy Holder:      The Commonwealth Of Massachusetts
Claimant:           Margaret A. Coakley-Hamelin
SSN:                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
Policy Number:      GLT205230

Dear Ms. Coakley-Hamelin:

We are writing to you regarding your claim for Long Term Disability (LTD) benefits under the group policy number GLT205230 for The Commonwealth of Massachusetts. This policy funds The Commonwealth of Massachusetts' LTD employee Benefits Plan. We have completed our review of your claim for benefits and have determined that you no longer meet the Definition of Disability. Accordingly, no further LTD benefits are payable to you under the terms of this policy after December 1, 2001.

Benefits are payable under the Policy if your claim satisfies the definition of "Total Disability" contained in the Policy. The Commonwealth of Massachusetts' LTD booklet for Policy GLT205230 defines Total Disability on Page 9 as follows:

Total Disability, means that during the Waiting Period and for the next 24 months, you are prevented by accidental bodily injury, sickness, Mental Illness, Substance Abuse, or pregnancy from performing Essential Duties of your Own Occupation, and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us

After that, you must be prevented from performing the Essential Duties of Any Occupation. Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean that you are Totally Disabled

Please also refer to page 10 of the booklet, which states:

The Hartford will cease benefit payment on the first to occur of:

1) the date you are no longer Disabled;
2) the date you fail to furnish proof, when requested by us, that you continue to be Disabled;
3) the date you refuse to be examined by a Physician, if we require such an examination;

Benefit Management Services
Simsbury Disability Claim Office
P.O. Box 2999
Hartford, CT 06104-2999
Fax (860) 843-4715

4) the date you die;
5) the date determined from the Maximum Duration of Benefits Table shown in the Schedule of Insurance;
6) the date your Current Monthly Earnings exceed 80% of your Indexed Pre-Disability Earnings.

Your Long term Disability benefits became effective on March 22, 1999. As such, the definition of disability that applies to your claim changed on March 22, 2001. At that time you must be Totally Disabled as outlined in the second portion of the above definition in order to continue to be eligible for Long Term Disability benefits.

We based our decision to terminate you claim for benefits on policy language and all of the documents contained in your claim file, viewed as a whole, including the following specific information:

1) Letter to you from The Hartford dated August 12, 1999
2) Physical Capacities Exam form dated August 31, 1999, completed by Dr. Jacobson
3) Letter from you to The Hartford dated May 15, 1999
4) Letter dated January 11, 1999 from Dr. Jacobson
5) A copy of your LTD enrollment card
6) A job description for the position of Director of Clinical Education
7) Attending Physicians Statement (APS) dated May 11, 1999, completed by Dr. Jacobson
8) Employee Statement completed by you on May 10, 1999
9) Employer Statement completed by Ellis C. Paakkonen on May 12, 1999
10) Letter to you from The Hartford dated May 26, 1999
11) Letter to The Commonwealth from The Hartford dated June 3, 1999
12) Letter to Lancaster & Gemini Travel from The Hartford dated June 3, 1999
13) Letter to you from The Hartford dated June 3, 1999
14) Payment Options form completed by you on June 16, 1999
15) Letter to The Commonwealth from The Hartford dated June 23, 1999
16) Job description for the position of Independent Travel Consultant
17) Physical Demands Analysis form dated June 17, 1999, completed by Monika Cook
18) Letter from Lancaster Travel to The Hartford dated June 22, 1999
19) Letter to Lancaster & Gemini Travel from The Hartford dated June 30, 1999
20) Letter to The Commonwealth from The Hartford dated June 30, 1999
21) Letter to you from The Hartford dated June 30, 1999
22) Medical information from Dr. Jacobson dated September 3, 1998 through April 30, 1999
23) Letter to you from The Hartford dated October 5, 1999
24) Letter to you from The Hartford dated January 13, 2000
25) Letter to Lancaster & Gemini Travel from The Hartford dated February 10, 2000
26) Medical information from Dr. Jacobson dated June 30, 1999 through December 14, 1999
27) Claimant Questionnaire completed by you on March 1, 2000
28) Letter to Dr. Blood from The Hartford dated March 16, 2000
29) Letter to Dr. Jacobson from The Hartford dated March 16, 2000
30) Physical Capacities Exam form dated April 17, 2000, completed by Dr. Blood
31) Letter to you from The Hartford dated July 27, 2000

32) Work and Education History form completed by you
33) Claimant Questionnaire completed by you on August 4, 2000
34) Medical information from Dr. Jacobson dated February 29, 2000 through July 19, 2000
35) Medical information from Dr. Blood dated April 17, 2000
36) Letter to Dr. Liu from The Hartford dated August 24, 2000
37) Letter to you from The Hartford dated October 6, 2000
38) Medical information from Dr. Blood dated July 6, 2000 through September 25, 2000
39) Letter to you from The Hartford dated January 23, 2001
40) Physical Capacities Exam and Attending Physician's Statement form dated February 9, 2001, completed by Dr. Blood
41) Claimant Questionnaire completed by you on February 19, 2001
42) Medical information from Dr. Safran dated September 12, 2000 through January 16, 2001
43) Medical information from Dr. Liu dated February 8, 2000
44) Medical information from Dr, Blood dated February 24, 2000 through March 30, 2000
45) Medical information from Dr. Gross dated February 17, 2000 through March 5, 2000
46) Medical information from Dr, Lewis dated April 3, 2000 through April 20, 2000
47) Medical information from Kesler Physical Therapy dated February 27, 2001 through May 10, 2001
48) Medical information from UMASS Memorial Hospital dated April 17, 2000 through June 8, 2001
49) Letter to William J. Ritter from The Hartford dated August 9, 2001

Based on the information contained in your file, the findings indicated that you have sedentary work capacity. Information from Dr. Jane Lewis states that you have the following capabilities:

A) You are able to sit for 8 hours with your elbow supported;
B) Stand for 4 hours;
C) Walk for 4 hours;
D) Drive for 6 hours;
E) Lift up to 10lbs
F) Occasional lifting over your head

The Work History form that you completed indicated that you participated in the following:

- Educational history includes: graduation from high school, Bachelor's and Master's degrees in Education
- Work History - 25 years as a Associate Professor of Respiratory Therapy, and 3 years as a Travel Agent

Using the information listed above an employability analysis was conducted, which showed that there are a number of occupations that are within your physical capabilities and for which you are qualified. This listing of occupations is a representative sample of the occupations for which you are qualified. Those occupations include:

Travel Agent

If you have any questions, please feel free to contact our office at (800) 531-5855.  Our office hours are 8:15 AM to 4:15 PM EST, Monday through Friday.

Sincerely,

Vince D. Castagno, Examiner
Hartford Life and Accident Insurance Co.



April 9, 2002

William J. Ritter
MacCarthy Pojani & Hurley
Counselors At Law
446 Main Street / 21st Floor
Worcester, MA 01608

| | |
|---|---|
| Policy Holder: | The Commonwealth Of Massachusetts |
| Claimant: | Margaret A. Coakley-Hamelin |
| SSN: | 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 |
| Policy Number: | GLT205230 |

Dear Attorney Ritter:

We are writing in regard to your letter dated 1/28/02 appealing the denial of your claim for Long Term Disability (LTD) benefits.

We have received a response from our medical department. Based on their recommendations a re-evaluation of our 8/9/01 Employability Analysis Report is needed prior to making a final determination on her appeal. Ms. Coakley-Hamelin's file has been referred to our Vocational Rehabilitation Department for review.

Once their recommendations are received and reviewed we will advise you of the status of her appeal. If you have any questions, please contact our office via phone (860) 843-9351 or FAX (860) 843-6918.

Sincerely,

Daniel H. Connors, BMS Appeal Specialist
Hartford Life and Accident Insurance Company

200 Hopmeadow Street
Simsbury, CT 06089
860 525 8555

Mailing Address: P.O. Box 2999
Hartford, CT 06104-2999



3

## MacCARTHY POJANI & HURLEY, LLP

COUNSELORS AT LAW

446 MAIN STREET - 21ST FLOOR

WORCESTER, MASSACHUSETTS 01608

TELEPHONE: (508) 798-2480

FACSIMILE: (508) 797-9561

DENNIS POJANI
JOHN F. HURLEY, JR.
WILLIAM J. RITTER
ANTHONY J. SALVIDIO, II
STEPHAN M. RODOLAKIS
DAWN E. CACCAVARO
MARK S. FOSS

PHILIP J. MacCARTHY
(1947-1999)
JOHN MACUGA, JR.
(1975-1998)

January 28, 2002

**Certified Mail**

Hartford Life and Accident Insurance Co
P.O. Box 2999
Hartford, CT 06104-2999

Attn: Vince D. Castagno

Re:  Margaret A. Coakley-Hamelin
     Policy Holder: Commonwealth of Massachusetts
     SSN: 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
     Policy Number: GLT205230

Dear Mr. Castagno:

This office represents Margaret Coakley-Hamelin of 12 Michael Lane, Sterling, Massachusetts who has been on long term disability since March 22, 1999. Please accept this letter as a formal request to appeal Hartford's decision to terminate Ms. Coakley-Hamelin's disability benefits effective December 1, 2001 in accordance with the Appeals procedure set forth on page 19 of the Long Term Disability Plan. This appeal seeks a review of the determination that Ms. Coakley-Hamelin is not disabled from performing the essentials of any occupation. On behalf of Ms. Coakley-Hamelin, I also request to review the documents upon which the determination to deny benefits was based including all records or reports of Dr. Jane Lewis referenced in your letter of December 3, 2001.

Please contact me at the above number to discuss this matter, and please copy this office on all correspondence to Ms. Coakley-Hamelin.

Very truly yours,

William J. Ritter

WJR/gds
F:\data2\Coak. appl.doc





April 25, 2002

William J. Ritter
MacCarthy Pojani & Hurley
Counselors at Law
446 Main Street / 21st Floor
Worcester, MA 01608

| | |
|---|---|
| Policy Holder: | The Commonwealth Of Massachusetts |
| Claimant: | Margaret A. Coakley-Hamelin |
| SSN: | 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 |
| Policy Number: | GLT205230 |

Dear Attorney Ritter:

We are writing in regard to your letter dated 1/28/02 appealing the denial of your claim for Long Term Disability (LTD) benefits. We have completed our review of Ms. Coakley-Hamelin's appeal and find that satisfactory proof of continued Total Disability has not been provided.

After again reviewing the pertinent documents and evidence in the claim file, we uphold our termination. Please refer to our letter dated 12/3/01 which lists the evidence contained in the claim file. Our decision to uphold the termination of her claim is based upon that evidence, your letter dated 1/28/02, and the following additional information:

1. 4/2/02 University Disability Consortium Medical Review
2. 4/16/02 Employability Analysis Report

On page 4, in the Your Long Term Disability Benefits section of the booklet-certificate it states, "Benefits will continue as long as you remain Disabled up to the Maximum period of payment. You must provide satisfactory proof to The Hartford that you continue to be Disabled in order to continue receiving benefits.

On page 5, in the Definitions section of the booklet-certificate it states, "Any Occupation, as used in this booklet certificate, means an occupation for which you are qualified by education, training or experience and that has an earnings potential of greater than 50% of your Indexed Pre-disability Earnings."

200 Hopmeadow Street
Simsbury, CT 06089
860 525 8555

Mailing Address: P.O. Box 2999
Hartford, CT 06104-2999

Page 2
Margaret Coakley-Hamelin

On page 9, in the Definitions section of the booklet-certificate it states, "Totally Disabled/Total Disability means that during the Waiting Period and for the next 24 months, you are prevented by accidental bodily injury, sickness, Mental Illness, Substance Abuse, or pregnancy from performing the Essential Duties of Your Occupation, and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us. After that, you must be so prevented from performing the Essential Duties of Any Occupation."

On page 10, in the Your Coverage section of the booklet-certificate it states, "Benefit payments will cease on the earliest of the following dates:
1.  the date you are no longer Disabled;
2.  the date you fail to furnish proof, when requested by The Hartford, that you continue to be Disabled;…".

A review of Ms. Coakley-Hamelin's file finds that she was employed as an Associate Professor and claimed disability as of 12/22/98 due to lupus, myofascial pain syndrome, and chronic costochondritis. Her claim was approved with benefits effective 3/22/99.

On 12/3/01 her claim was terminated when it was determined that she no longer met the policy definition of Total Disability. On 1/28/02 you appealed this determination requesting that we review our decision that Ms. Coakley-Hamelin is not Totally Disabled from Any Occupation.

We referred her file to University Disability Consortium for review. In a 4/2/02 report their physician states, "Based on the information I have reviewed, I feel the patient could sit for about four hours a day and walk for one hour, drive for about two hours. She could occasionally lift up to ten lbs and rarely heavy objects.

She could push or pull objects up to ten lbs occasionally, and rarely or never objects that are heavier. I feel that the major reason why she could not engage in more consistent and regular work is because of the fatigue and the frequent exacerbations of her illness requiring doctor visits, hospital stays, emergency visits, and increased medications.

I do not see evidence in the records of limitations due to medications, other than the usual side effects of the multiple medications that she takes; all of which can contribute to fatigue, decreased ability to concentrate, mood swings and visual problems."

The Work and Educational History form received in our office indicates that Ms. Coakley-Hamelin has a Masters Degree in Education, and 25 years of experience as a respiratory therapist and at least 3-4 years of part time work as a Travel Agent.

Page 3
Margaret Coakley-Hamelin

We referred her file to our Vocational Rehabilitation Department to conduct an Employability Analysis based on the physical restrictions outlined by University Disability Consortium, her education, and prior work history.

Our Vocational Rehabilitation Counselor's 4/16/02 report identified the following representative sample of occupations found in the Department of Labor's Dictionary of Occupational Titles that she could perform: Holter Scanning Monitor, Cardiac Monitor Technician, and Routing Clerk. These occupations have a potential earnings amount greater than 50% of her indexed pre-disability earnings or $14.21 per hour.

In order to remain eligible for benefits satisfactory proof of continued Total Disability must be provided. A medical review of the evidence contained in the claim file finds that Ms. Coakley-Hamelin is capable of performing part time sedentary work. Our Vocational Rehabilitation Department has identified sedentary occupations she is capable of performing with part time earnings potential are greater than 50% of her indexed pre-disability earnings.

It is our determination that satisfactory proof of continued Total Disability from Any Occupation has not been provided. Therefore, we are upholding the termination of her claim.

Please be advised that we are closing her file at this time, and no further review will be conducted with respect to Ms. Coakley-Hamelin appeal. If you have any questions regarding this matter, please feel free to contact me at (860) 843-9351.

Sincerely,

Daniel H. Connors, BMS Appeal Specialist
Hartford Life and Accident Insurance Company





# UNIVERSITY DISABILITY CONSORTIUM
### *Physician Specialists for Disability Evaluation and Management*

April 2, 2002

Dan Connors
HARTFORD LIFE
200 Hopmeadow Street
Simsbury, CT  06089

**Re:   Claimant:   Margaret Coakley-Hamelin**
        **SS#:         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**

## MEDICAL RECORD REVIEW

**INTRODUCTION:** Ms. Hamelin is 46 years old. The diagnostic codes include SLE, myofascial pain syndrome and costochondritis.   Her occupation was as an associate professor. Her work type is described as light. Disability began 12/22/98.

The medical record review of the earliest record that I have reviewed was an evaluation on 9/3/98 from Dr. Eric Jacobson, a rheumatologist at the University of Massachusetts Medical Center. He reviews her rheumatic disease history.  At the time of the first visit she was on Prednisone, as well as number of other medications.  Dr. Jacobson describes some joint swelling and feels that methotrexate should be used again (apparently had been used in the past). He also notes that Imuran had been  used, but there were side effects. His working diagnosis is SLE. On 9/29/98, she sees Dr. Eric Jacobson, who states that she seems to be responding to methotrexate. The other medications that she is taking at that time include Prednisone, Plaquenil, Lodine XL, calcium, synthroid, Prozac, Trazodone, Flexeril, Prilosec, Fosamax, Ultram and Fioricet as needed, Axid and Toradol, as needed.

ADMINISTRATIVE OFFICES • 173 Lincoln Street • Newton Highlands, Massachusetts 02461-1501 • 617.527.1855 • Fax 617.527.2570 • Email UDC@UDC1.com

On 12/1/98, she sees Dr. Jacobson again. He reviews her medication and does an examination. He describes good range of motion of joints, costochondral tenderness and trigger points. The diagnoses at this time includes systemic lupus erythematosis, chronic costochondritis and myofascial pain syndrome. She sees Dr. Jacobson again on 12/24/98 with acute right shoulder pain that he calls subacromial bursitis. He prescribes resting the shoulder and then gradually increasing activities.

On 1/11/99, Dr. Jacobson writes a letter in which he states that Ms. Hamelin needed time away from work because of chronic pain and fatigue, secondary to systemic lupus erythematosis, generalized myofascial pain syndrome and costochondritis. He describes that her symptoms persist in spite of multiple medications. There are then a number of other office visit notes, primarily from Dr. Jacobson. Also she sees Dr. Liu, who administers trigger point injections. A disability evaluation by Dr. Jacobson on 5/11/99 describes limitation of multiple activities due to pain. There are also other notes describing her having carpal tunnel syndrome by history and examination.

Laboratory work in December of 1999 include normal urinalysis, normal CBC, sed rate of 1, normal liver tests. On 2/17/00, Dr. Goss examines Ms. Hamelin. He is apparently an orthopedist. He describes her having been in an automobile accident in May of 1999 with an injury to the right shoulder. He orders an MRI, which showed a partial tear of the supraspinatus tendon.

On 2/29/00, Dr. Jacobson describes her lupus as being quiet, with the main problem being myofascial pain. He does some medication adjustments. A questionnaire completed by Ms. Hamelin on 3/1/00 indicates that chronic pain makes it impossible for her to work.

*Margaret Coakley-Hamelin - Page 2*

A note from Dr. Suzanne Blood, a primary care physician, dated 4/17/00, describes the disability issue of Ms. Hamelin. The description includes significant impairment of usual activities of daily living. There was no examination to confirm any actual physical limitations.

In the year 2000, multiple examinations by Dr. Jacobson. He frequently does a trigger point or tender area injection. Medications are similar to those described before and she continues to take Prednisone 10 mg a day and methotrexate, also Vioxx, Plaquenil, folic acid, Fosamax and a number of other drugs.

On 7/6/00, she sees Dr. Nancy Liu, apparently also a rheumatologist, who is taking over Ms. Hamelin's care from Dr. Jacobson. She reviews the history. She describes synovitis of some small finger joints and also wrists. She increases methotrexate because she feels the lupus may be more active. Laboratory work at that time is unremarkable. X-rays of the feet are normal. X-rays of the hands show possible early rheumatoid disease. Other notes during this time refer to her having had papillary carcinoma of the thyroid in 1997. She had a whole-body scan in July of 2000, which was essentially negative. There are also notes referring to her having almost continuous physical therapy.

On 9/25/00, a letter from Dr. Liu describes the patient's main limiting factor as fatigue. She requires multiple rest periods through the day. In February of 2001, Dr. Liu describes the patient as having active systemic lupus erythematosis and having to increase her methotrexate to 22.5 mg weekly. At this point, she is still taking 10 mg of Prednisone per day, plus a variety of other medications. On 2/12/01, she sees orthopedist, Dr. Goss, again because of continuing shoulder pain. Dr. Goss eventually concluded the problem as an impingement situation.

On 3/30/01, she is seen by Dr. Scarlet, a podiatrist, who feels that some continued foot pain and swelling is due to an intermetatarsal compression neuropathy or even a neuroma.

There is a note from an emergency walk-in service of 5/17/01 with chest pain made worse by deep inspiration, a diagnosis of pericarditis, treated with increasing Prednisone dose. The last note that I have is a physical capacity evaluation form that appears to be completed in the spring of 2001. The feeling at that time was that Ms. Hamelin could sit essentially for a full day, stand about half the day, drive three-quarters of a day, occasionally lift light weights, but could not climb, push or pull weights. Other activities could be done either occasionally or frequently.

**ATTEMPTS TO REACH TREATING PHYSICIAN:** On 3/28/02, I spoke to Nancy Liu, M.D. who is Ms. Hamelin's rheumatologist. Dr. Liu states that at her most recent office visit of 2/28/02 medications were methotrexate 25 mg subcutaneously weekly, Prednisone 7.5 mg daily, Plaquenil 200 mg, Vioxx and other agents . She states that Ms. Hamelin has had recurrent bouts of pericarditis, requiring increased steroids sometimes in the form of an intravenous infussion. Her joint disease is very difficult to control and fatigue has been major symptom.

**IMPRESSION AND DISCUSSION:** I agree with the diagnoses mentioned previously, mainly systemic lupus erythematosis, myofascial pain syndrome, and right shoulder rotator cuff tear.

Based on the information I have reviewed, I feel the patient could sit for about four hours a day and walk for one hour, drive for about two hours. She could occasionally lift up to ten lbs and rarely heavy objects. She could push or pull objects up to ten lbs occasionally, and rarely or never objects that are heavier. I feel that the major reason why she could not

engage in more consistent and regular work is because of the fatigue and the frequent exacerbations of her illness requiring doctor visits, hospital stays, emergency visits, and increased medications.

I do not see evidence in the records of limitations due to medications, other than the usual side effects of the multiple medications that she takes; all of which can contribute to fatigue, decreased ability to concentrate, mood swings and visual problems.

*Harvey Schwartz MD*

Harvey Schwartz, M.D.
(Rheumatology)

*(hamelin.h13)*





April 2, 2002

Nancy Liu, M.D.
UMass Memorial Health Care
55 Lake Avenue
North Worcester, MA 01655

RE:  **Margaret Coakley-Hamelin**
     SS# 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

Dear Dr. Liu,

Thank you for taking the time to discuss Margaret Coakley-Hamelin's medical case with me.   We reviewed her current medications which include methotrexate 25 mg subcutaneously weekly, Prednisone 7.5 mg daily, also Plaquenil and Vioxx and a number of other medicines that we did not enumerate.

You stated that one of the major problems has been difficulty controlling her joint disease, in spite of all the medications mentioned above. We also discussed her recurrent pericarditis, treated with increasing corticosteroids, and we reviewed her surgery for right rotator cuff at the end of 2001. You also mentioned that fatigue is also a major symptom for Ms. Hamelin.

Thank you again for this valuable information that I can include in my report for her insurance carrier to more accurately determine her functional ability and limitations.

Sincerely,

*Harvey Schwartz, MD*

Harvey Schwartz, M.D.

*Margaret Coakley-Hamelin - Page 6*

ADMINISTRATIVE OFFICES • 173 Lincoln Street • Newton Highlands, Massachusetts 02461-1501 • 617.527.1855 • Fax 617.527.2570 • Email UDC@UDCI.com





**Medical Center**

University Campus
55 Lake Avenue North
Worcester, MA 01655

March 9, 2004

William J. Ritter, Esquire
MacCarthy, Pojani & Hurley, LLP
446 Main Street
21st Floor
Worcester, MA  01608

      Re:   Margaret A. Coakley-Hamelin
            Date of Birth: 10/14/54

Dear Atty. Ritter:

I am the internist who cares for Margaret Coakley-Hamelin. She was diagnosed with an overlap syndrome of system lupus erythematosus and rheumatoid arthritis commencing in approximately 1991. I have cared for her as an internist since 1993, although I did leave my practice area for approximately 2 years, between 1998 and 2000. I have seen Mrs. Hamelin since I have returned to the area.

Her history was that she was initially diagnosed with rheumatoid arthritis with disabling discomfort in her wrists and hands. She continued valiantly to try to work as a respiratory therapist and teacher, but fatigue was overwhelming and made it impossible for her to continue at some point. I don't have the exact date of her onset of total disability.

Over the ensuing ten years, the diagnosis of lupus was considered because of recurrent pericarditis and other labarotomy abnormalities. At this juncture she continues to have significant fatigue, pain in her wrists and hands, recurrent pericarditis (just was treated with high dose steroids in early February of this year), and significant general malaise and fatigue. She requires several rest periods throughout the day.

Her current medications include Methotrexate 25mg subq weekly, Sulfasalazine 2g daily, Plaquenil 400mg/day, Prednisone currently at 30mg/day, and Embrel 25mg subq twice weekly.

I see Mrs. Hamelin several times a year and she is also seen by her rheumatologist, Dr. Nancy Liu. She clearly has an overlap syndrome of both rheumatoid arthritis and systemic lupus. In my opinion, to a reasonable degree of medical certainly, she is 100% disabled by this illness. I have seen recurrent flares whenever she has attempted to increase her overall activity level and I would strongly recommend against her returning to any type of employment. She requires several rest periods a day and her recurrent flares of both the rheumatoid arthritis and SLE symptoms are unpredictable. In my opinion, to a reasonable degree to medical certainty, these flares are exacerbated by fatigue.

I think her prognosis is guarded, considering the difficulty of treating her lupus and the significant amount of prednisone she has required over the last ten years. As mentioned, she is back on a high dose of steroids for a recent flare of her pericarditis.

If I can answer further questions, please feel free to call me at 508-856-2731.

Sincerely,

Abigail Adams, M.D.

/cag





June 11, 2004

John F. Hurley, Jr.
MacCarthy Pojani & Hurley, LLP
446 Main Street, 21st Floor
Worcester, MA 01608

Policy Holder:    The Commonwealth Of Massachusetts
Claimant:         Margaret A. Coakley-Hamelin

Policy Number:    GLT205230

Dear Attorney Hurley:

This will acknowledge receipt of your letter dated 6/7/04 concerning your claim for Long
Term Disability (LTD) benefits.

As you know, we previously considered Ms. Coakley-Hamelin's appeal of our decision
to terminate her claim for LTD benefits.  Please refer to our letter dated 4/25/02 in which
we explained our decision on her appeal and noted that our decision was final.

In view of the fact that we have fully addressed her appeal we will not provide a formal
response to your 6/7/04 letter.

Sincerely,

Daniel H. Connors, BMS Appeal Specialist
Hartford Life and Accident Insurance Company

200 Hopmeadow Street
Simsbury, CT 06089
Telephone 860 525 8555

Mailing Address: P.O. Box 2999
Hartford, CT 06104-2999