## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARGARET COAKLEY HAMELIN | ) | |
| Plaintiff, | ) | |
| v. | ) | 04-CV-40241 FDS |
|  | ) | |
| HARTFORD LIFE and ACCIDENT | ) | |
| INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF IT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant, Hartford Life and Accident Insurance Company ("Hartford") moves this Court pursuant to Rules 12(b)(1), 12(c) and 12(h)(3) of the Federal Rules of Civil Procedure to dismiss Plaintiff's Complaint ("Complaint"). As grounds for this motion, Hartford states that this Court lacks subject matter jurisdiction over Plaintiff's claim.

## RELEVANT FACTUAL ALLEGATIONS

1. Plaintiff is a resident of Sterling, Worcester County, Massachusetts. Complaint, attached hereto as Exhibit 1, at ¶ 3.

2. On November 19, 2004, Plaintiff filed the Complaint pursuant to the Employment Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., seeking judicial review of Hartford's termination of Plaintiff's long-term disability insurance benefits. See Complaint at P. 1.

3. Hartford issued Group Policy No. GLT-205230 ("the Policy") to The Commonwealth of Massachusetts Group Insurance Commission to "provide disability benefits for

employees of the Commonwealth of Massachusetts who enroll in the Plan." Complaint at ¶ 6; the Policy, attached hereto as Exhibit 2, at P.1.

4.  Plaintiff alleges that, "[s]he was employed as an Associate Professor of Respiratory Therapy at Quinsigamond Community College in Worcester, Massachusetts and was a member of the Plan." Complaint at ¶ 7.

5.  Plaintiff further alleges that she became disabled from work in 1999, and that "she received disability benefits under the Hartford policy from March 1, 1999 to December 1, 2001." Complaint at ¶ 8.

6.  By letter dated December 3, 2001, Hartford notified Plaintiff that her long-term disability benefits were terminated because she was no longer disabled as defined by the Plan. Complaint at ¶ 11.

7.  Prior to the termination of Plaintiff's long-term disability benefits, Hartford paid Plaintiff a long-term disability benefit of $1,475.18 per month. Affidavit of Vince Castagno ("Affidavit"), attached hereto as Exhibit 3, at ¶ 3.

8.  Plaintiff claims that she is entitled to monthly long-term disability benefits under the Policy "from December 2, 2001 to the present." Complaint at ¶ 22, P.4-5.


STANDARD OF REVIEW

In ruling on the instant motion to dismiss for lack of subject matter jurisdiction, this Court "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. U.S., 99 F.3d 1200, 1209-10 (1st Cir. 1996). The Court may also consider whatever evidence has been submitted to the Court. Id.

ARGUMENT

I.    Plaintiff's Complaint Lacks Subject Matter Jurisdiction Because Government Sponsored
Plans are Exempt from ERISA

The sole Count in Plaintiff's Complaint seeks the award of benefits due under the Policy,

in addition to attorneys' fees and costs.  See Complaint at PP. 4-5.  Plaintiff's sole authority for

her claim is ERISA § 502(a)(1)(B).  While ERISA generally governs claims for benefits claimed

under an employer sponsored plan, ERISA § 4 (b)(1) specifically exempts governmental plans as

follows:

> (b) The provisions of this title shall not apply to any employee benefit if—
> (1) such plan is a governmental plan (as defined in § 3(32)).

29 U.S.C. § 1003 (b)(1).

ERISA further defines a "governmental plan" in pertinent part as follows:

> The term 'governmental plan' means a plan established or maintained for its
> employees by the Government of the United States, by the government of any
> State or political subdivision thereof, or by any agency of instrumentality of the
> foregoing...

29 U.S.C, § 1002 (32).

Clearly, the long-term disability benefits Plaintiff is seeking under the Policy constitute

an employee benefit that is established through a government-sponsored plan.  Complaint at P.1

and ¶ 6.  Furthermore, by its terms, the Policy only covers employees of the Commonwealth of

Massachusetts.  See the Policy at Certificate of Insurance at P. 2.  Therefore, there can be no

dispute that: 1) the Policy provides coverage for a "governmental plan" as that term is defined by

ERISA Section 4(b)(1) and 2) as such, claims for benefits under the Policy are not subject to

ERISA.

In order to maintain federal jurisdiction, Plaintiff must satisfy either: 1) 28 U.S.C. § 1331, allowing for jurisdiction based on a federal question;[1] or 2) 28 U.S.C. § 1332, allowing for jurisdiction based on diversity of citizenship. Without a viable claim under ERISA, the Court does not have federal jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's claim.

Therefore, Plaintiff's suit can only be maintained in this Court if there is diversity jurisdiction pursuant to 28 U.S.C. § 1332. Diversity jurisdiction pursuant to 28 U.S.C. § 1332 exists only where the Plaintiff demonstrates: 1) that the parties are "citizens of different states" and 2) that "the matter in controversy exceeds $75,000, exclusive of interest and costs." 29 U.S.C § 1332(a). While Plaintiff's Complaint alleges that the parties are from different states— which the Defendant does not contest for the purposes of this motion—Plaintiff's Complaint, even when read in the light most favorable to her, does not plead that the matter in controversy exceeds $75,000.00.

Plaintiff seeks benefits from "December 2, 2001 to the present." Complaint at ¶ 22. Prior to the termination of Plaintiff's long-term disability benefits, Hartford paid Plaintiff a long-term disability benefit of $1,475.18 per month. Affidavit at ¶ 3. On the date Plaintiff filed suit, November 19, 2004, less than $53,106.48 ($1,475.18 x 36 months) in back benefits had accrued.[2] This amount falls short of the $75,000.00 amount in controversy requirement of 29 U.S.C. § 1332(a). Thus, Plaintiff cannot demonstrate either of the two predicates necessary for this Court to maintain subject matter jurisdiction, namely: federal question jurisdiction; or

---

[1]     28 U.S.C. § 1331 states: "The District Court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[2]     The operative date for determining if a party has met the $75,000 amount in controversy requirement of 28 U.S.C. § 1332 is the date the party files suit. Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001). Even if the benefits Plaintiff seeks were projected through April 1, 2005, they would only amount to $59,007.20.

diversity jurisdiction.   Accordingly, the Court should dismiss the Complaint for lack of

jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.


## CONCLUSION

For the reasons set forth above, Hartford respectfully requests that this Court dismiss

Plaintiff's Complaint because there is no basis for federal jurisdiction

Respectfully submitted,
Defendant Hartford Life and Accident
Insurance Company

By its Attorneys,


David B. Crevier, BBO# 557242
Katherine R. Parsons, BBO# 657280
Crevier & Ryan, LLP
1500 Main Street, Suite 2020
Springfield, MA 01115-5727
Tel:  413-787-2400
Fax:  413-781-8235
Email: dcrevier@crevierandryan.com
        kparsons@crevierandryan.com


## CERTIFICATE OF SERVICE

I certify that I served a true copy of the foregoing by mailing the same via first class mail
postage pre-paid on Plaintiff's Counsel, said service having taken place this 6th day of April,
2005.

# EXHIBIT 1

UNITED STATES
DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 NOV 19  A 11: 16

MARGARET COAKLEY HAMELIN )    U.S. DISTRICT COURT
    Plaintiff )    DISTRICT OF MASS.
vs )    Civil Action
  )    No.
  )
THE HARTFORD LIFE AND )    PLAINTIFF'S COMPLAINT
ACCIDENT INSURANCE COMPANY )
    Defendant )

04-40241

## NATURE OF ACTION

The plaintiff, Margaret Coakley Hamelin, files this Complaint against the defendant The Hartford Life and Accident Insurance Company, (hereinafter "Hartford") seeking judicial review of the Hartford's denial of the plaintiff's Complaint for Long Term Disability benefits.

### JURISDICTION AND VENUE

1.    Jurisdiction of the Court is based upon 29 USC §§1132(e)(1) and 1132(f) which give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee benefit plan which for purposes of the instant case, grants to participants Long Term Disability Benefits. The defendant, Hartford provides participants in the Commonwealth of Massachusetts Group Insurance Plan with Long Term disability insurance subject to the terms and conditions of the Plan. (A copy of the Plan is attached hereto as Exhibit "1")

2.    Under the Employee Retirement Income Security Act of 1974, as amended (hereinafter, "ERISA") (29 U.S.C. Section 1001 et seq) the Plan at issue in this litigation must contain provisions for an administrative or internal appeal of a denial of benefits. The plaintiff has exhausted all of her remedies in this claim and therefore this matter is properly before this Court for judicial review of the denial of her benefits.

3.    The plaintiff, Margaret Coakley Hamelin, is a resident of Sterling, Worcester County, Massachusetts.

4.    Venue is proper in this district pursuant to 29 USC §1132 (2) which allows an action under Title I of the Employee Retirement Income Security Act of 1974 as amended ("ERISA") to be brought in the district where the plan is

administered, where the breach took place or where a
defendant resides or may be found and process may be served
in any other district where a defendant resides or may be
found.

## PARTIES

5.  The plaintiff, Margaret Coakley Hamelin, was born on October
    14, 1954.

6.  The defendant, Hartford Life and Accident Insurance Company,
    issued Group Policy No: GLT-205230 that provides disability
    benefits for employees of the Commonwealth of Massachusetts
    who enroll in the Plan.  The defendant, Hartford has a place
    of business at 200 Hopmeadow Street, Simsbury, CT.

7.  At all times relevant, the plaintiff Margaret Coakley
    Hamelin, was an employee of the Commonwealth of
    Massachusetts.  She was employed as an Associate Professor
    of Respiratory Therapy at Quinsigamond Community College in
    Worcester, Massachusetts and was a member of the Plan.

8.  Ms. Coakley Hamelin suffered for a number of years from
    rheumatoid arthritis and systemic lupus. She became disabled
    from work on 1999 and she received disability benefits under
    the Hartford policy from March 1, 1999 to December 1, 2001.

9.  The definition of disability contained in the policy
    provides in essence that an employee is considered disabled
    during the first 24 months of disability if the employee is
    prevented from performing Essential Duties of Her Own
    Occupation.  Hartford accepted Ms. Coakley-Hamelin's claim
    that she was prevented from performing Essential Duties of
    Her Own Occupation from March 1, 1999 until December 1, 2001
    and paid disability benefits to her during that period.

10. The definition for disability under the Plan provides in
    essence that after 24 months, an employee is disabled and
    entitled to benefits under the Plan if the employee is
    prevented from performing the Essential Duties of Any
    Occupation.  See Plan, Pg. 9.

11. On December 3, 2001, the Hartford notified the plaintiff
    that the Hartford considered that Ms. Coakley-Hamelin was no
    longer disabled as defined by the Plan and that her long
    term disability benefits were terminated.  (A copy of the
    letter is attached as Exhibit "2").

12.  By letter dated January 28, 2002, Ms. Coakley-Hamelin,
     through her attorney, appealed the termination or denial of
     her benefits.   (A copy of the letter is attached as Exhibit
     "3").

13.  By letter dated April 25, 2002, the Hartford denied Ms.
     Coakley-Hamelin's appeal.  (A copy of the letter is attached
     as Exhibit "4").

14.  Hartford based its denial on the report of a physician
     selected by the University Disability Consortium.  The
     physician, Dr. Harvey Schwartz, never examined Ms. Coakley
     Hamelin but only reviewed the medical records in Hartford's
     possession.  (A copy of Dr. Schwartz's report is attached as
     Exhibit "5").

15.  Dr. Schwartz does not state in any portion of his report
     that Ms. Coakley-Hamelin is capable of performing the
     Essential Duties of Any Occupation.  Dr. Schwartz's report
     acknowledges that Ms. Coakley-Hamelin suffers from systemic
     lupus erythematosis, myofascial pain syndrome and a right
     shoulder rotor cuff tear.  He concludes that she could sit
     for four hours per day, walk for one hour and drive for two
     hours.  He further concludes that "the major reason why she
     could not engage in more consistent and regular work is
     because of the fatigue and frequent exacerbation's of her
     illness requiring doctor visits, hospital stays, emergency
     visits and increased medications."

16.  Dr. Schwartz also noted that the medications that Ms.
     Coakley-Hamelin is required to take can contribute to
     fatigue, decreased ability to concentrate, mood swings and
     visual problems.

17.  Dr. Schwartz also confirmed that as of the date of his
     report, Ms. Coakley-Hamelin was taking 7.5 mg of Prednisone
     daily.  Dr. Schwartz was advised by Ms. Coakley-Hamelin's
     treating physician, Dr. Lui, that controlling Ms. Coakley
     Hamelin's joint disease was a major problem and that Ms.
     Coakley-Hamelin had major fatigue symptoms.

18.  Subsequent to the denial of Ms. Coakley-Hamelin's appeal,
     the plaintiff through counsel, submitted a report of Dr.
     Abigail Adams dated March 9, 2004.  Dr. Adams is a treating
     physician of Ms. Coakley-Hamelin.  In her report, Dr. Adams
     noted that Ms. Coakley-Hamelin's daily Prednisone dosage was
     up to 30 mg and that she is 100% disabled by rheumatoid
     arthritis and systemic lupus.  Dr. Adams recommended against
     any increased activity level as such activity produces

3

recurrent flare-ups of Ms. Coakley-Hamelin's symptoms. (A copy of the report is attached as Exhibit "6").

19. The plaintiff, on June 7, 2004, in reliance of the report of Dr. Adams, requested that Ms. Coakley Hamelin's long term disability benefits be reinstated.

20. Hartford, by letter dated June 11, 2004, denied Ms. Coakley-Hamelin's request and closed her file. Hartford refused to consider Dr. Adams report and again denied benefits to Ms. Coakley-Hamelin. (A copy of the denial letter is attached as Exhibit "7").

### COUNT I

21. The plaintiff restates the allegations set forth in paragraphs 1 - 20 of this complaint and incorporates them herein by reference.

22. The plaintiff, Margaret Coakley-Hamelin is entitled to payment of Long Term Disability benefits from December 2, 2001 to the present and continuing pursuant to the Commonwealth of Massachusetts Long Term Disability Plan.

23. The decision of the Hartford to deny Long Term Disability benefits is arbitrary and capricious, wholly unreasonable and against the weight of the medical evidence.

24. The defendant Hartford has breached its duty to the plaintiff under the Plan to fairly administer claims for benefits and to provide a full and fair review of denial of claims.

25. The defendant Hartford has misapplied the definition of "Disability" as set forth in the Plan and deprived the plaintiff of benefits to which she is entitled under the terms of the Plan.

WHEREFORE, the plaintiff Margaret Coakley-Hamelin requests that this Court grant for following relief.

A. That this Court order, declare and adjudge that under the terms of Long Term Disability Plan, that the total disability continued from December 2, 2002 and that she continues to be disabled within the Plan's provisions.

4

B. That after making such determination, the Court order the defendant Hartford, to provide all disability benefits to which the plaintiff is entitled under the terms and conditions of the Plan.

C. That the Court award plaintiff her attorneys fees pursuant 29 USC §1132 (q) as well as interest and costs.

D. That the Court award the plaintiff such further necessary or proper relief as it seems just and equitable.

John F. Hurley, Jr., Esquire
Attorney for the Plaintiff
MacCarthy, Pojani & Hurley, LLP
446 Main Street
Worcester, MA 01608
508-798-2480
BBO #245200

Dated: November 18, 2004

F:\data2\mch.cmp.doc

5

EXHIBIT 2

# Long Term Disability
# Insurance Plan



**Group Insurance Commission**
**Commonwealth of Massachusetts** 

**THE HARTFORD**
**LONG TERM DISABILITY PLAN**
**GROUP INSURANCE POLICY GLT-205230**

## TABLE OF CONTENTS

Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page   2
Schedule of Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page   3
Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page   4
Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page   5
Your Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10
Disability Benefits Conditions, Limitations and
   Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 15
Claims Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 18

1                       BC-205230 3rd (Rev.)

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
**Hartford, Connecticut**
(Herein called The Hartford)

---

**CERTIFICATE OF INSURANCE**
Under
**The Group Insurance Policy**
**as of July 1, 1993**
**Revised Effective July 1, 1998**
**Issued by The Hartford**
to
**THE COMMONWEALTH OF MASSACHUSETTS**
**GROUP INSURANCE COMMISSION**

---

This is to certify that, subject to the terms of Group Policy No. GLT-205230, the employees of the Commonwealth of Massachusetts are insured for the benefits described in Benefits, below.

The Policy insures the Commonwealth of Massachusetts employees who:

- are eligible for the insurance; and
- become insured; and
- continue to be insured;

according to the terms of the Policy.

The terms of the Policy that affect your insurance are contained in the following pages. This Certificate of Insurance and the following pages are your Booklet-certificate and are a part of the Policy.

No assignment by you of any of your group insurance will be valid.

This Booklet-certificate takes the place of any prior one issued to you covering this insurance. This certificate is evidence of insurance under the policy.

---

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

Lynda Godkin, *Secretary*          Lowndes A. Smith, *President*

2

### THE HARTFORD
### LONG TERM DISABILITY PLAN
### SCHEDULE OF BENEFITS

Some of the terms used within this Booklet-certificate are capitalized and have special meanings. Please refer to the **definitions** when reading about your benefits.

| | |
|---|---|
| PLAN EFFECTIVE DATE: | July 1, 1993<br>Revised Effective July 1, 1998 |
| EMPLOYEES ELIGIBLE: | All active full-time employees and half-time employees who work at least 18 3/4 or 20 hours per week (depending on the agency's definition of "half time"). |
| ELIGIBILITY WAITING PERIOD | You will have completed the Eligibility Waiting Period on the first day of the month following the lesser of two full calendar months or 60 continuous days of active full-time employment. |
| INDIVIDUAL EFFECTIVE DATE: | The first day of the month immediately following your Eligibility Waiting Period. |
| PLAN CONTRIBUTIONS: | You pay the cost of the insurance plan. |

### CONTRIBUTORY LONG TERM DISABILITY BENEFITS FOR YOU

| | |
|---|---|
| Benefit Percentage | 50% of your Pre-disability Earnings. |
| Maximum Benefit | The maximum benefit is $10,000 per month. |
| Minimum Benefit | The minimum monthly benefit is $100. |
| Waiting Period | The Waiting Period is the period of time you must be disabled before benefits become payable. It is the first 90 days of any one period of Disability. |

If you return to work for a total of 14 days or fewer during a Waiting Period, the Waiting Period will not be interrupted or extended. You must be Disabled by the same condition for the total Waiting Period, except for the 14 days or fewer you work.

BC-205230 3rd (Rev.)

## ABOUT THIS PLAN

The Long Term Disability Plan of benefits is an employee-pay-all plan. It provides you with income protection if you become disabled from a covered accidental bodily injury, sickness or pregnancy. This booklet explains the terms of coverage. Final interpretation of all provisions and coverages will be governed by the Group Insurance Policy on file with The Hartford at its home office.

### ELIGIBILITY

Active full-time employees and half-time employees who work at least 18 3/4 hours or 20 hours per week (depending upon an agency's definition of "half-time") may join the Long Term Disability Plan. You become eligible for coverage the first day after you complete an *Eligibility Waiting Period* of the lesser of two full calendar months or 60 days of active full-time employment.

### ENROLLING FOR COVERAGE

To enroll for coverage, you must complete and sign The Hartford's enrollment form and deliver it to the employer.

If you enroll for coverage before you become eligible, your coverage will become effective the first day of the calendar month following the day you become eligible.

If you enroll for coverage within thirty-one days after the day you become eligible, your coverage will become effective the first day of the calendar month following the day you enroll.

If you enroll more than thirty-one days after the day you become eligible for coverage, you will not be insured until you satisfy The Hartford that you are insurable by submitting a signed medical health and history form. This form is provided by The Hartford. You may also be asked to submit to a medical exam and/or provide additional information and attending physicians' statements at your expense.

If you are absent from work due to accidental bodily injury, sickness, pregnancy, Mental Illness, or Substance Abuse, on the date your insurance would otherwise have become effective, your effective date will be deferred. Your coverage will become effective when you return to Active Work for one full day.

## YOUR LONG TERM DISABILITY BENEFITS

Disability benefits are issued monthly, and start on the day after you have been Disabled for 90 days. Disability must occur while you are insured under The Group Insurance Commission's Long Term Disability Plan. Benefits will continue as long as you remain Disabled up to the Maximum period of payment (see page 10). You must provide satisfactory proof to The Hartford that you continue to be Disabled in order to continue receiving benefits.

4

## DEFINITIONS

**Active Work/Actively at Work** means that you are performing, in the usual way, all of the regular duties of your job on a full time basis on a day which is one of your Employer's scheduled work days. You will be deemed actively at work on a day which is not one of your Employer's scheduled work days only if you were actively at work on the preceding scheduled work day.

**Any Occupation,** as used in this Booklet-certificate, means an occupation for which you are qualified by education, training or experience and that has an earnings potential greater than 50% of your Indexed Pre-disability Earnings.

**Changes in Coverage** means your coverage may increase or decrease on the date there is a change in your Monthly Compensation. Any changes to the provisions of this plan will not become effective for you unless you are Actively at Work on the date of the change, or for one full day following an absence from work.

Any changes in your Monthly Compensation which affect the benefits of this plan will not become effective unless the correct premium payments have been received by The Hartford.

**Current Monthly Earnings** means the monthly earnings you receive from any employer or for any work, while Disabled and eligible for Residual Disability benefits under this plan.

**Disabled** or **Disability** means either Totally or Residually Disabled or Total or Residual Disability.

**Essential Duty** means a duty that is substantial, fundamental or material to the occupation and is not incidental and cannot be reasonably omitted or changed. To be at work for the number of hours in your regularly scheduled work week is also an Essential Duty.

**Indexed Pre-disability Earnings**, as used in this policy, means your Pre-disability Earnings adjusted annually by adding the lesser of 10% or the percentage change in the Consumer Price Index (CPI-W).

The adjustment is made January 1st each year after you have been Disabled for 12 consecutive months, and if you are receiving benefits at the time the adjustment is made.

5

The term Consumer Price Index (CPI-W) means the index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. It measures on a periodic (usually monthly) basis the change in the cost of typical urban wage earners' and clerical workers' purchase of certain goods and services. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W may be used.

For the purpose of this benefit, the percentage change in the CPI-W means the difference been the current year's CPI-W as of July 31, and the prior year's CPI-W as of July 31, divided by the prior year's CPI-W.

**Medical Care** means consultation or medical advice is given or treatment is recommended, prescribed by, or received from a Physician. Treatment includes but is not limited to medical examinations, tests or attendance, use of drugs, medicines, medical services, supplies or equipment.

**Mental Illness** means any psychological, behavioral, or emotional disorder or ailment of the mind, including physical manifestations of such disorders, but excluding demonstrable, structural brain damage.

**Monthly Compensation** means your regular basic earnings. It does not include overtime pay, bonuses, fringe benefits, or any extra compensation.

**Other Income Benefits** mean the amount of any benefit for loss of income, provided to you or to your family, as a result of the period of Disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are eligible or that are paid to you, to your family, or to a third party on your behalf, pursuant to any of the following:

   (1) temporary or permanent disability benefits under a Workers' Compensation Law, occupational disease law, or similar law;

   (2) Disability, or sick-time pay you receive while eligible for benefits under this plan, or unemployment benefits provided by a governmental law or program as a result of your job with your Employer;

   (3) plan or arrangement of coverage, whether insured or not, as a result of employment by or association with your Employer or as a result of membership in or association with any group, association, union or other organization;

6

(4) individual insurance policy where the premium is wholly or partially paid by your Employer;

(5) "no-fault" automobile insurance plan;

(6) disability benefits from the United States Social Security Administration, the Canada Pension Plan, the Quebec Pension Plan, or similar plan that you, your spouse and children, are eligible to receive because of your Disability.

**Other Income Benefits** also mean any payments that are made to you, your family, or to a third party on your behalf, pursuant to any:

(1) Disability benefit under the Employer's retirement plan.

(2) portion of a settlement or judgment, minus associated costs, of a lawsuit that represents or compensates for your loss of earnings;

(3) retirement benefit from a retirement plan that is wholly or partially funded by employer contributions, unless:

    (a) you were receiving it prior to becoming Disabled; or

    (b) you immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement.

    Other Income Benefits do not include the portion, if any, of such retirement benefit that was funded by your after-tax contributions;

(4) retirement benefits from the United States Social Security Administration, the Canada Pension Plan, the Quebec Pension Plan, or similar plan that you, your spouse and children, receive because of your retirement, unless you were receiving them prior to becoming Disabled.

The amount of any increase in benefits paid under any federal or state law will not be considered as Other Income Benefits if such increase takes effect after the date benefits become payable under this plan, and is a general increase that is required by law that applies to all persons who are entitled to such benefits.

**Period of Disability** means a continuous length of time during which you are Disabled under this plan.

**Physician** means a legally qualified person whom we are required by law to recognize, is properly licensed to practice medicine, and is practicing within the scope of that license.

7

**Pre-disability Earnings** means your Monthly Compensation in effect on the day before you became Disabled.

**Pre-existing Condition** means any accidental bodily injury, sickness, mental illness, pregnancy, or episode of substance abuse, or any manifestations, symptoms, findings, or aggravations related to or resulting from the same or related accidental bodily injury, sickness, mental illness, pregnancy, or substance abuse for which you received Medical Care during the 365-day period that ends the day before (1) your effective date of coverage, or (2) the effective date of a Change in Coverage.

**Regular Care of a Physician** means appropriate care and attendance by a Physician other than yourself, your spouse, father, mother, brother, sister, son or daughter.

**Rehabilitative Employment** means any employment or services that prepares a Disabled person to resume gainful work and is approved in writing by The Hartford. This may include any necessary and feasible vocational testing, vocational training, work place modification, prosthesis, or job placement.

**Residual Disability** or **Residually Disabled** means you are prevented by accidental bodily injury, sickness, Mental Illness, Substance Abuse, or pregnancy, from performing some, but not all, the Essential Duties of your or Any Occupation, and as a result your Current Monthly Earnings are at least 20%, but no more than 80% of your Indexed Pre-disability Earnings.

**Substance Abuse** means the non-medical use of any of the following substances: alcohol, narcotics, sedatives, stimulants, hallucinogens, or any other such substance.

**Survivor** means (1) your spouse (wife or husband) who is mentally competent and was not legally separated from you at the time of your death; (2) your child (son or daughter) under age 19 who is dependent on you for financial support.

**The Hartford** means the Hartford Life and Accident Insurance Company.

8

**Totally Disabled/Total Disability** means that during the Waiting Period and for the next 24 months, you are prevented by accidental bodily injury, sickness, Mental Illness, Substance Abuse, or pregnancy from performing Essential Duties of your Own Occupation, and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us. After that, you must be prevented from performing the Essential Duties of Any Occupation. Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean that you are Totally Disabled.

**Vocational Rehabilitation/Rehabilitative Services** means employment or services that prepare you, if Disabled, to resume gainful work. If you are Disabled, our Vocational Rehabilitative Services may help prepare you to resume gainful work.

Our Vocational Rehabilitative Services include, when appropriate, any necessary and feasible vocational testing or training, workplace modification, to the extent not otherwise provided, prosthesis, or job placement.

**We/Us/Our** means the Hartford Life and Accident Insurance Company.

**Your (Own) Occupation,** as used in this Booklet-certificate, means your occupation as it is recognized in the general workplace. Your (own) occupation does not mean the specific job you are performing for a specific employer or at a specific location.

**You/Your/Insured Person** means the Insured Person to whom this Booklet-certificate is issued.

9

## YOUR COVERAGE

If, while insured for these benefits you become Disabled, you are eligible for a monthly benefit for your Disability and your premiums will be waived while you receive benefits under this coverage. To qualify, you must be Disabled for 90 days after the day you become Disabled. You must submit proof of Disability satisfactory to The Hartford. Your monthly benefits will begin as of the first day after the Waiting Period ends; no benefit will be paid for any day that you are not under the Regular Care of a Physician.

The Benefit Percentage is 50% of your average Monthly Compensation in effect as of the last day worked prior to your Disability, with the minimum monthly payment of at least $100 per month, to a maximum of $10,000 per month. Your monthly benefit will be the Benefit Percentage less any Other Income Benefits payable for that month.

Benefit payments will cease on the earliest of the following dates:

  (1) the date you are no longer Disabled;
  (2) the date you fail to furnish proof, when requested by The Hartford, that you continue to be Disabled;
  (3) the date you are no longer under the Regular Care of a Physician, or refuse to be examined by a Physician, if we require such an examination;
  (4) the date you die;
  (5) the date you reach the maximum period of payment according to the table shown below, subject to other plan limitations; or
  (6) the date your Current Monthly Earnings exceed 80% of your Indexed Pre-disability Earnings.

### MAXIMUM DURATION OF BENEFITS

| Age at date Disability starts | Maximum period of payment |
|---|---|
| Under age 61 | To age 65 |
| 61 | 4 years |
| 62 | 3 1/2 years |
| 63 | 3 years |
| 64 | 2 1/2 years |
| 65 | 2 years |
| 66 | 1 3/4 years |
| 67 | 1 1/2 years |
| 68 | 1 1/4 years |
| 69 or later | 1 year |

10

## CALCULATION OF MONTHLY BENEFIT

**Total Disability:**

If you are Disabled after the Waiting Period, your monthly benefit will be calculated as follows:

(1) Multiply your Monthly Compensation by the Benefit Percentage shown in the Schedule of Benefits; (see page 3)

(2) Locate the Maximum Benefit shown in the Schedule of Benefits; (see page 3)

(3) Compare the amounts determined in items (1) and (2) above and from the lesser amount subtract all Other Income Benefits.

The result is your monthly benefit. Your monthly benefit, however, will not be less than $100.00.

**Example of a calculation of monthly benefit for Total Disability:**

Susan is 37 years old and earns $3,100 monthly. She receives other monthly income benefits of $300.00.

To calculate her monthly benefit, she must:

1) multiply $3,100 by .50 (her 50% Total Disability benefit) = $1,558.00

- and

2) subtract $300 (her Other Income Benefits) from $1,558 = $1,258.00

Susan's monthly Total Disability benefit is $1,258.00.

**Remember:**

If Susan's Other Income Benefits were to exceed her monthly salary, she would still receive $100 monthly (e.g., the Minimum Benefit).

11

**Residual Disability:**

If you are able to perform some but not all the Essential Duties of your or Any Occupation, and are Residually Disabled, the following calculation is used to determine your monthly benefit.

$$\text{Monthly benefit} = ((A - B) / A) \times C$$

Where

A = Your Indexed Pre-disability Earnings.
B = Your Current Monthly Earnings.
C = The monthly benefit payable if you were Totally Disabled.

Your monthly benefit, however, will not be less than $100. If a monthly benefit is payable for less than a month, The Hartford will pay 1/30 of the monthly benefit for each day you were Disabled.

If you are participating in a program of Rehabilitative Employment approved by us, your monthly benefit will be determined by the Rehabilitative Employment Benefit (see page 13).

## PROOF OF COMPENSATION

The Hartford has the right to require proof of your Monthly Compensation. All such proof must be satisfactory to The Hartford. The Hartford, or its representative, may examine your business and personal financial records, including income tax returns, to determine your monthly income. These records may be examined as often as The Hartford may reasonably require.

## EFFECT OF OTHER INCOME BENEFITS

If you are paid Other Income Benefits in a lump sum, The Hartford will pro-rate the lump sum over the period of time it would have been paid if not paid in a lump sum; or if the period of time cannot be determined, The Hartford will pro-rate the lump sum over a period of 60 months.

The Hartford may make a retroactive benefit adjustment for any retroactive Other Income Benefit payments.

## PERIODS OF DISABILITY

Periods of Disability that are due to unrelated causes and are separated by your return to Active Work are deemed to be separate Periods of Disability.

Periods of Disability that are due to the same or related causes are treated as one period, unless they are separated by your return to Active Work for at least six months.

Only one Waiting Period will be required for all Periods of Disability that are treated as one Period of Disability. All Periods of Disability must begin while you are insured.

## BENEFITS DURING REHABILITATION

You might be able to return to work while you are engaged in an approved program of Rehabilitative Employment after you have received Long Term Disability benefits for a period of time. If you qualify for the program, you will continue to be paid the monthly benefit while you are in the program that The Hartford would have paid had you not been able to work, *less* 50% of your Monthly Compensation from the Rehabilitative Employment. Your monthly income from these two sources may not exceed 100% of your pre-Disability income.

These benefits will be paid in accordance with all other provisions of the policy.

13

## SURVIVOR INCOME BENEFIT

The Hartford will pay a benefit to the surviving spouse or surviving dependent children of a covered employee who dies after satisfying the Waiting Period or who has received Long Term Disability payments under the policy.

The Survivor Income Benefit will be payable to your surviving spouse in a lump sum equal to three times the Maximum Monthly Benefit shown in the Schedule of Benefits or three times the amount of the last monthly Long Term Disability payment to you, whichever is less. Surviving dependent children will receive the benefit in equal shares if there is no surviving spouse. The Survivor benefit will be payable to your estate if no surviving spouse or children exist.

If a minor child is entitled to benefits, The Hartford will determine whether to make survivor income benefit payments to the person caring for and supporting the child until a legal guardian is appointed.

Your Survivor must submit a certified copy of your death certificate to The Hartford.

## EXTENDED BENEFITS

If your Long Term Disability coverage ends because you are no longer employed by the Commonwealth of Massachusetts or are no longer in a class eligible for insurance, benefits may be payable if you become Disabled. The Disability must occur:

(1) within 12 months after you cease active employment due to an employer-approved leave of absence;

(2) within 90 days after you cease active employment due to a plant closing or partial closing (as defined by Massachusetts law);

(3) within 31 days after you cease active employment due to a cause other than a plant closing partial closing, or employer approved leave of absence; or

(4) before the date you become eligible for any other similar group benefits plan.

Benefits will be based on the plan in force on the date your active employment ends.

14

If you are Disabled and you cease to be an active employee, your coverage will be continued during the Waiting Period for the same Disability and after the Waiting Period for as long as you are entitled to Plan benefits.

If the policy should terminate while you are Disabled, Long Term Disability benefits will continue to be available during the uninterrupted continuance of the same Disability. Benefits will not be provided beyond the date on which The Hartford would have ceased to make payments had the coverage remained in force.

## DISABILITY BENEFITS CONDITIONS, LIMITATIONS AND EXCLUSIONS

**Exclusions:**

1. Long Term Disability benefits are not payable for Disabilities that result from commission of or an attempt to commit an assault, battery, intentionally self-inflicted injury, or felony; war or any act of war, insurrection, rebellion or participation in a riot or civil disorder; or a Pre-existing Condition except as described below.

2. Benefits are not payable during the Waiting Period.

**Conditions and Limitations:**

1. If benefits are payable for a period that is less than one month, the amount payable for each day will be one-thirtieth of the monthly rate.

2. No benefits will ever be payable for any Disability that is due to, contributed to by, or results from a Pre-existing Condition, unless such Disability begins:

    (a) after 12 consecutive months while insured during which you received no Medical Care for the Pre-existing Condition; or

    (b) after 24 consecutive months during which you have been continuously insured under the Group Insurance Commission's Long Term Disability Plan.

3. If you are Disabled because of Mental Illness that results from any cause, or any condition that may result from Mental Illness or Substance Abuse then, subject to all other Policy provisions, benefits will be payable for a total of 12 months, thereafter, for so long as you are confined in a hospital or other place licensed to provide Medical Care.

15

**WHEN INSURANCE ENDS**

Your insurance ends when any one of the following events occurs:

(a) you leave employment with the Commonwealth of Massachu-setts;

(b) you are no longer eligible;

(c) the Group Policy ceases; or

(d) your premium is not paid by the due date.

Please refer to the Extended Benefits provisions for conditions under which your insurance may continue when your employment terminates.

16

Your cost for coverage may change when your age or Monthly Compensation changes. Premium must be paid to The Hartford throughout the Waiting Period. After the Waiting Period, no premium will be due for you while you are receiving benefits.

**Monthly Premium Rates Guaranteed July 1, 1998 to June 30, 2002**

| Age | Rate per $100 of Monthly Compensation |
|---|---|
| Under 40 | .23 |
| 40-44 | .46 |
| 45-49 | .68 |
| 50-54 | 1.08 |
| 55-59 | 1.44 |
| 60-64 | 1.08 |
| 65-69 | .48 |
| 70+ | .27 |

17

## CLAIMS INFORMATION

On receipt of due proof of claim, Long Term Disability Benefits are payable to you. Accrued benefits are paid monthly during the period for which benefits are payable under the policy. If there is any balance still due you at the end of such period, it will be paid upon receipt of due proof.

**Notice of Claim.** Written notice of the event on which a claim is based must be given to The Hartford at its home office in Hartford, Connecticut no later than one month before the Waiting Period ends. On receipt of such notice you will be given forms for filing proof of claim. Later notice will be accepted only if it is furnished as soon as is reasonably possible.

**Proof of Claim.** Written proof of claim must be given to The Hartford at its home office in Hartford, Connecticut, on The Hartford's forms. If you have not been given such forms within fifteen days after receipt of notice, you may fulfill the terms of the policy as to proof of claim by giving written proof of: (i) the occurrence of the Disability; (ii) the nature of the Disability; and (iii) the extent of the Disability.

After the end of the 90-day Waiting Period, proof of your Disability must be given as above within 120 days after the start of the period for which The Hartford owes payment. Thereafter, written proof that you have remained so Disabled must be given to The Hartford at such times as it may reasonably require.

The Hartford will require as part of the proof of claim evidence of the following:

(1) the amount and source of all Other Income Benefits named and payable; and

(2) your application for, and your submission of all the required proof of all other such benefits.

Late proof will be accepted only if it is furnished as soon as is reasonably possible.

When you submit a claim, you will be required to apply for Social Security disability benefits. If the Social Security Administration denies your eligibility for any such benefits, you will be required to follow the process established by the Social Security Administration to reconsider the denial and, if denied again, to request a hearing before an Administrative Law Judge of the Office of Hearing and Appeals.

**Time Payment of Claims.** If written Proof of Claim is furnished, benefits will be paid at the end of each month that you are Disabled. If payment for a part of a month is due at the end of the claim, it will be paid as soon as written Proof of Claim is received.

**Examinations.** The Hartford, when it deems it reasonably necessary and at its own expense, has the right to have a doctor examine you while you have a claim pending under the policy.

**Appeals.** If a claim for benefits is denied, you will be notified in writing of the decision and the specific reasons for the denial. The letter will specifically refer to the policy provisions on which the denial was based, and will provide an explanation of the review procedure.

On any denied claim, you may appeal to The Hartford for a full and fair review. You may 1) submit issues and documents in writing; 2) request a review in writing within 60 days of the claim decision; and 3) ask to review pertinent documents.

The Hartford will make a decision no more than 60 days after receipt of your request for a review, except in special circumstances, but in no case more than 120 days after the review request is received. The written decision will include specific references to the policy provisions upon which the review decision is based.

**Legal Actions.** No one may sue for payment of claim less than sixty days after due proof of claim is furnished or more than 3 years after the date proof of claim is required by the policy.

19

## Subrogation

If an insured person:

   (1) suffers a Disability because of the act or omission of a third
      party; and

   (2) becomes entitled to and is paid benefits under this Group
      Policy in compensation for lost wages; and

   (3) does not initiate legal action for the recovery of such benefits
      from the third party in a reasonable period of time;

then The Hartford will be subrogated to any rights the insured
person may have against the third party and may, at its option, bring
legal action to recover any payments made by it in connection with
the Disability.

## Right to Recover Overpayment

We have the right to recover from you any amount that is deter-
mined to be an overpayment of benefits under this plan. Repayment
to us must be made within 60 days of your receipt of our notice of
the amount of the overpayment. If you do not repay the overpay-
ment within the 60 day period, we may, without forfeiting our right to
collect an overpayment through any means legally available to us,
recover all or any portion of the overpayment by reducing or
withholding future benefit payments including, if applicable, the
Minimum Monthly Benefit.

## Misstatement of Facts

If material facts about you were not stated accurately, your premium
may be adjusted, and the true facts used to determine if, and for
what amount, coverage should have been in force. After the
insurance has been in force for two years during your lifetime, no
statement made by you relating to your insurability will be used to
contest the insurance for which the statement was made. In order to
be used, the statement must be in writing and signed by you.

20

EXHIBIT 3

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARGARET COAKLEY HAMELIN )<br>Plaintiff, )<br>v. )<br>)<br>HARTFORD LIFE and ACCIDENT )<br>INSURANCE COMPANY, )<br>Defendant. )<br>)  | 04-CV-40241 FDS |

## AFFIDAVIT OF DANIEL H. CONNORS IN SUPPORT OF HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

NOW COMES Daniel H. Connors, and under oath does hereby state and depose:

1. My name is Daniel H. Connors. I am employed by Hartford Life and Accident Insurance Company ("Hartford") as a BMS Appeal Specialist.

2. All averments made herein are based on my personal knowledge.

3. Prior to the termination of Plaintiff's long-term disability benefits, Hartford paid Plaintiff a long-term disability benefit of $1,475.18 per month.

Signed under the pains and penalties of perjury this 4th day of April, 2005.

Daniel H. Connors

TINA SEKORSKI
NOTARY
MY COMMISSION 12/28/09